MULLINS *v.* STATE

5159                                         401 S. W. 2d 9

Opinion delivered April 4, 1966

*Pryor & Barnes,* for appellant.

*Bruce Bennett,* Attorney General, *Fletcher Jackson,* Asst. Attorney General, for appellee.

Osro Cobb, Justice. Appellant, a Negro minister, was tried and convicted on the charge of murder in the second degree. The criminal information charged that one Barbara Kendricks, also a Negro, expired in the course of and as a result of an attempt by appellant to perform an unlawful and felonious abortion upon her.

The jury returned a verdict finding appellant guilty as charged and assessing the punishment at seven years imprisonment in the state penitentiary.

A motion for new trial was seasonably filed. The court denied the motion and sentenced appellant in accordance with the verdict of the jury and at the same time set an appeal bond in the sum of $2,500.

All questions raised on this appeal relate to the procurement and introduction into evidence of a written confession by appellant.

We quote from Act 489 of 1965, which now appears as Ark. Stat. Ann. § 43-2105 (Supp. 1965):

"Issues of fact shall be tried by a jury, provided that the determination of fact concerning the admissibility of a confession shall be made by the court when the issue is raised by the defendant; that the trial court shall hear the evidence concerning the admissibility and the voluntariness of the confession out of the presence of the jury and it shall be the court's duty before admitting said confession into evidence to determine by a preponderance of the evidence that the same has been made voluntarily."

Appellant seasonably raised the issue of admissibil-

ity of his purported confession and the trial court conducted an extensive hearing in chambers on the issue as provided by Act 489, *supra*. In said hearing appellant testified as did the officers who were present when the confession was purportedly made and reduced to writing. At the conclusion of the hearing in chambers the court made the following ruling:

(a) That the confession of the accused had been taken and accepted and reduced to writing by Sgt. Odis A. Henley of the State Police and had been signed by the accused.

(b) That said confession had been voluntarily given by the accused and secured by the officers without coercion, threats or abuse and without enticements or inducements for the execution of same.

(c) That the accused, prior to said confession, had been fully apprised of his constitutional rights, that statements made by him could be used against him, and that he had a right to refuse to make any statement.

(d) That the accused was informed of his right to have an attorney but refused same.

(e) That for the reasons set forth in (a) through (d) above, the confession of the accused was held to be admissible in evidence.

Appellant's confession was thereafter introduced into evidence and read to the jury. Said confession, omitting details as to the use of the catheter, follows:

"January 20, 1965
"Camden, Ark.
"Ouachita Co.
"Sheriff office.

"I, Arthur J. Mullins, 447 Newton St. Camden, Ark. make this statement to Sgt. O. A. Henley of

the Ark. State Police of my own free will & accord without any promises, or threats. On Monday January 18, 1965, I was at my house and the phone rang. I answered it and a girl said she was Bobby Kendrix, Joe Green daughter, and she told me she was in a family way and wanted me to help her out. I asked her how she know I could help her, she said someone had told her. I told her I could not help her. She phone me three or four times Monday, each time she called she said she would pay me, but never did say how much,—each time I told her I could not help her,—then on Tuesday morning Jan. 19, 1965, around 9:20 A.M. I came back to the house and the phone rang and it was Bobby. She said she had been calling me but couldn't get me. I told her I didn't have anything to do it with and she told me she had a catheter. I told her I still wouldn't do it. She hung up, then in about 10 or 15 minutes later she call me back, and she said if she come over right quite [sic] would I do it. I told her no,—then she told me to drive over on Truman Road N/W and pick her up and that she would get back herself. I drove over to Truman Road in my 1962 Green Chev. and she was walking on Truman Road. I stopped and picked her up. I drove her to Scott Alley on Washington Street. She got out of my car. I drove around the block and then picked her up on Jefferson & Adams Street, then I drove south on Adams Street then turned East onto Newton Street. I let her out of my car by the Hunter Scrap yard. I drove on to my house. I got out and went into my house. She walked to my house, around to the back door. She came into the back door into the room. She gave me the catheter. . . . I took the catheter . . . then she said she was getting sick . . . She raised up on the couch and said her head was about to burst open, then she fell over on the couch . . . . I check her and she was dead. I called Doctor R. C. Lewis, a color [sic] doctor. He come to my house in about 10 or 15 minutes. He checked her and said she was dead. I told the doctor she said she was sick and

that her head was hurting. The doctor told me to call the Coroner. I asked the doctor who the coroner was, and he told me Doctor Pruitt. Doctor Lewis left and I called Doctor Pruitt. He told me to call the ambulance and that he would check with Doctor Lewis. Ben Williams ambulance came and picked Bobby up, and took her to the funeral home. Then I got in my car and drove to the paper mill and told her father, Joe Green, that Bobby had died in my house. Alvin Gordon went with me. We left the paper mill and I drove Alvin Gordon back to his house then I went back to my house, then I got the catheter I used and wrapped it up in some paper and went out in my back yard to my trash barrel and burnt it up.

"This statement is the truth to the best of my knowledge.

"Arthur J. Mullins."

When the state rested the defense made no motion for a directed verdict and instead called Chief of Police G. D. Cole to testify for the defense. In the course of the examination of Cole, the defense brought out the death of the victim and other facts relating directly to the commission of the crime for which appellant was upon trial. This testimony reflected that the father of the victim had reported to Cole his suspicions of foul play in the death of his daughter and requested an investigation, and that in carrying out a search warrant as to appellant's premises, Cole found "a kit containing some long needles, syringes and things like that."

Chief Cole further testified that on his first visit to Mullins' residence, Mullins invited him in and was observed on his hands and knees scrubbing the floor of the room where the victim had died and that there was a strong odor of Clorox.

Thus, when the case went to the jury, adequate evi-

dence had been placed before the jury to support the verdict which it returned, assuming, of course, that the trial court had committed no error in admitting the confession of appellant in evidence.

Sgt. Odis A. Henley testified that the defendant was advised that he did not have to make a statement; that he was entitled to a lawyer; that he was entitled to his constitutional rights; that anything he said would be used against him in court; and that there were no promises of reward made to the defendant to induce him to make a statement. According to Henley, Mullins replied that he did not want counsel and that he was a man of the cloth and wanted to tell "about it and get it off his conscience." The testimony of Sheriff Linebarrier supports that of Sgt. Henley. The Sheriff also testified that there were no threats of violence made as to the defendant and that the statement was of Mullins' own free will and accord.

Against the above testimony of the state witnesses appellant testified in the hearing in chambers (a) that he was not advised of his right to an attorney; (b) that he had not been advised of his right to refuse to make a statement; and (c) that he was in fact led to believe that the statement he was induced to make would not be used against him. Appellant was not asked whether he personally knew about his constitutional rights. Chief Cole was called as a witness for the defense and contradicted the testimony of appellant as to his claiming to have been promised that his statement would not be used against him.

Counsel for appellant urges in his brief that appellant was subjected to three and a half hours of interrogation before signing the confession. This is not supported in the record. The officers testified that it took approximately one and one half hours. When appellant was asked about the time element, he said he did not know and therefore gave no support to this contention.

When the officers picked up appellant at the County Workshop on the day of his purported confession and took him to his residence to carry out a search pursuant to a valid search warrant, appellant fainted and was out for two or three minutes and was revived when Chief Cole placed some cold towels upon his head. Appellant testified that he had suffered a small heart attack in the past and had been attended by two local physicians, but following the fainting episode he made no request for an examination or treatment by a doctor. It was some two hours later that appellant signed the purported confession.

Officers Henley and Linebarrier were in position to observe appellant during all of the time here in question and they testified that appellant appeared normal and in full possession of his faculties. Furthermore, appellant's signed statement of the facts has the ring of truth. It treats with facts and circumstances which could hardly have been conjured up by anyone except a principal to the crime itself.

The ultimate purpose of any criminal trial is to discover the truth as to the guilt or innocence of the accused. Of course, this result should be obtained without violating any constitutional right of the accused. We should remember, however, that in such proceedings the rights of the accused are not the only rights involved. The law abiding citizens also have rights as to enforcement of our criminal laws and in seeing that their lives and property are not placed in jeopardy by freeing guilty criminals to resume their depredations. Trials, therefore, must encompass all reasonable safeguards in the ends of justice. Furthermore, a sensible balance must be maintained between the conflicting interests of the public and of the accused.

In recent years there has been an appalling increase in crime and in crimes of violence in particular. The threat of crime now casts its ugly and ominous shadow over the daily lives of all of our people. This alarming

spread of crime has been significantly coincident with the recent trend in the courts to emphasize technicalities rather than substance as to guilt or innocence in criminal prosecutions. This trend has been particularly noticeable with reference to apprehensions and efforts of peace officers to obtain factual solutions of the crimes under investigation. Companion to this new judicial attitude of expanded consideration for the accused has been the emergence of an unwarranted cloud of suspicion as to the integrity and dedication of peace officers in the performance of their duties. Their task of apprehending criminals and enforcing the law is both difficult and dangerous. A shocking number of law enforcement officers give their lives every year in line of duty. We rely upon our peace officers to protect all of the precious personal and property rights of our people and we should likewise rely upon them to give truthful testimony when testifying under oath, absent proof of personal animus or bias as to the accused.

All of appellant's contentions as to the confession, including the advisement of his right to counsel, were examined by the trial court in its hearing in chambers. The conflicting testimony between appellant and the officers made a question of fact to be decided by the court pursuant to Act 489 of 1965. The court made a finding adverse to appellant and admitted appellant's confession in evidence. We have concluded that there is substantial evidence in the record to support the trial court's determination and said determination will not be disturbed here on appeal. *Brown* v. *State,* 239 Ark. 909, 39 S. W. 2d 344 (1965); *Vaughan* v. *State,* 169 Ark. 1212, 277 S. W. 866 (1925); *Williams* v. *State,* 63 Ark. 527, 39 S. W. 709 (1897). See also, *Wright* v. *U. S.* 159 F. 2d 8 (1944).

Having found that the contentions of appellant are without merit, the judgment of the trial court is affirmed.