WILLIAM WAYNE DECKER *v.* STATE OF ARKANSAS

CR 73-8                                            499 S.W. 2d 612

Opinion delivered October 1, 1973

*William C. McArthur,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *O. H. Hargraves* Deputy Atty. Gen., and *Richard Mattison,* Asst. Atty. Gen., for appellee.

CARLETON HARRIS, Chief Justice. William Wayne Decker, appellant herein, was convicted in the Pulaski County Circuit Court of robbery allegedly occurring on January 21, 1970. The jury, under the Habitual Criminal Act, fixed his punishment at twenty-one years confinement in the Arkansas Department of Correction. Two days later, Decker was convicted in the same court of the crime of grand larceny and his punishment was fixed by the jury at thirty years confinement. No appeal was taken from the judgment in either case. Attorney J. H. Cottrell represented Decker in both cases through appointment by the court. Thereafter, Decker filed a petition for a Writ of Habeas Corpus in the Pulaski County Circuit Court, and that court, treating the petition as a Criminal Procedure Rule I Petition, appointed new counsel to represent Decker. On hearing, the trial judge denied any relief, and from the judgment so entered, Decker appealed to this court. Three points were asserted for reversal as follows:

I.

The alleged confession of appellant was improperly admitted into evidence.

II.

The appellant was denied adequate representation of counsel at trial insofar as a key witness was not called.

## III.

Appellant was denied his constitutional right to appeal his case.

The original cases were tried by an assigned judge, and following the Rule I hearing and before judgment was entered, the regularly presiding judge of the Pulaski County Circuit Court caused the record of the two trials to be transcribed for his use and information in determining the Rule I Petition. These transcripts were filed with this court along with the record of the Rule I hearing. On April 16, 1973, this court entered an order which *inter alia* provides as follows:

"Inasmuch as the complete record is now available, it is the order of this court that this appeal (from the denial of relief under Criminal Procedure Rule I) be treated as an appeal from the original convictions, and the clerk of the court is directed to notify counsel for appellant that he may present and brief any additional points wherein it is felt that the trial court committed reversible error. The clerk shall likewise notify the Attorney General to reply to appellant's brief, said briefs to be submitted in compliance with Rule Eleven of this court."

These briefs have now been filed and the case is ready for disposition. The following additional points for reversal have been raised.

## IV.

Defendant's requested instruction re alibi was improperly refused.

## V.

Defendant's motion for dismissal of grand larceny charge (No. 72070) on grounds of double jeopardy was improperly denied.

## VI.

Defendant's motion for a directed verdict was improperly denied. (No. 72070).

## VII.

Defendant's objection to reference of the robbery in the trial for grand larceny was improperly overruled.

## VIII.

Defendant's confession was improperly admitted in rebuttal. (No. 72070).

## IX.

Defendant's confession was inadmissible and improperly admitted because he was not properly advised of his constitutional rights.

Two other points are raised but they are repetitious of the first two points asserted in the Rule I hearing.

We proceed to a discussion of the contentions for reversal.

## I.

This allegation refers only to the trial of Decker on the charge of grand larceny as the confession was not used in the robbery case. The record reveals that appellant was arrested on July 16, 1971 by a North Little Rock policeman, subsequently brought to the Little Rock Police Department, and questioned by City Detectives Larry Dill and Bill Johnson. Decker testified that he had been wounded before his arrest[1] and was suffering from gunshot wounds through his foot, side, and arm, and that he had been taken to Memorial Hospital in North Little Rock where he was treated, taken the next day to Medical Center where the gunshot wounds were cleansed and he was given a prescription to kill the pain.

[1]See Decker v. State, 251 Ark. 28, 471 S.W. 2d 343.

He said that he was beaten and "slapped around" by the officers before signing a waiver[2]; that he was beaten with a pistol by Dill, and finally signed the rights waiver about 1:30 in the morning; subsequently he stated that it was about 10:00 P. M. Decker also said that he asked for an attorney but the request was denied. As for the statement made, appellant said that he signed his name on a blank sheet and initialed four blank pages, being told that the officers were getting a specimen of his signature. Decker's statement is somewhat conflicting and accordingly confusing. Detective Dill testified that Decker was brought to the Little Rock Police Department and advised of his rights about 5:15 P.M.; that appellant stated he understood, and signed the waiver in the presence of the witness and Detectives Jones and Johnson. Dill stated that Decker was not beaten, threatened, nor mistreated in any manner; that the latter was entirely normal and aware of what he was doing when he signed the waiver. The witness said that when Decker would make a statement, the information given would be checked out and that he was questioned, off and on,[3] until approximately 1:45 A.M., at which time he made a complete statement which was reduced to writing by Dectective Jones. The witness then read the written statement to Decker who signed it at the bottom of the third page and initialed it at the top and bottom of the first and second pages.

The court conducted a hearing in chambers on the question of whether the statement had been voluntarily given, and after hearing the evidence, ruled that it was admissible. In *Mullins* v. *State,* 240 Ark. 608, 401 S.W. 2d 9, this court, in passing on the same contention now raised by Decker, stated:

> "All of appellant's contentions as to the confession, including the advisement of his right to counsel, were examined by the trial court in its hearing in chambers. The conflicting testimony between

[2]This referred to the "Miranda form", setting out constitutional rights, Decker acknowledging by signature that he had been explained these rights and told that any statement could be used against him.

[3]The officer testified that actual interrogation consumed three or four hours.

appellant and the officers made a question of fact to be decided by the court pursuant to Act 489 of 1965. The court made a finding adverse to appellant and admitted appellant's confession in evidence. We have concluded that there is substantial evidence in the record to support the trial court's determination and said determination will not be disturbed here on appeal."

We hold that there was substantial evidence to support this finding.

## II.

Decker's defense was based upon an alibi, i.e., he claimed to have been in Jackson, Mississippi at the home of a sister at the time the alleged crime occurred. However, when both the robbery and grand larceny cases were called, counsel for appellant announced that he was ready; no request was made for a continuance nor was there any contention that there was an important witness for the defense who could not be present. At the trial on the charge or robbery, Donald Decker, brother of appellant, testified that "around the 17th" (January, 1970), Decker, together with his wife and child, mother and father, went to Jackson, Mississippi to visit Decker's sister and stayed five or six days.

At the trial on the charge of grand larceny, Effie Decker, mother of appellant, testified that she and her husband, appellant and his wife and baby, and David Bryant, all went to Jackson to visit her daughter and appellant's sister, Charlene Graham, on January 17 and returned after staying there five days; that appellant was there the entire time, the family traveling in appellant's automobile. David James Bryant, a cousin of appellant, also testified to those facts. The alleged error is based on the fact that the sister, Charlene Graham, who had in the meanwhile moved to California, was not present at either the robbery or grand larceny trials. In the Rule I hearing Mrs. Graham did testify, stating that the relatives heretofore mentioned came to her home on the 16th or 17th and remained there

either five or six days. She said that appellant stayed there the entire period of time. The witness had since moved back from California to Little Rock.

We find no merit in this contention for several reasons. In the first place, no effort was made to obtain the witness and Decker himself testified that he really didn't think it was necessary for her to be present since he had two other witnesses to testify to the same facts. This apparently was a decision made by the appellant himself rather than by counsel. At any rate, no motion for continuance was made and Decker accordingly has waived any right to object. Not only that, but since the mother and other relatives did testify to the alibi, the evidence of the sister would only have been cumulative.

### III.

As earlier stated, this appeal is being treated as an appeal from the original convictions.

### IV.

This point relates to the alibi defense. In the robbery case, the trial court was requested to give an instruction offered by the defendant on the defense of alibi, which was refused; however, no error was committed for the jury was given an instruction (the court giving its own instruction), specifically mentioning the defense of alibi, and telling the jury that such a defense is as proper and legitimate if proved as any other and all the evidence bearing upon this point, along with all the evidence, should be carefully considered by the jury and "if the jury have a reasonable doubt as to whether the defendant was there when the crime was committed they should give the defendant the benefit of the doubt and find him not guilty." This was a correct instruction and appellant can have no legitimate complaint that his own instruction was not given.

In the grand larceny case, no instruction was requested on this phase. We, of course, have held many times that where an accused desires an instruction on a particular issue not covered by the instructions given,

he should request a correct instruction thereon and will not be heard to complain if he fails to do so. *Lowmack* v. *State*, 178 Ark. 928, 12 S.W. 2d 909.

## V.

It is next asserted that the trial court committed error by failing to grant appellant's motion for dismissal of the grand larceny charge on grounds of former jeopardy. To discuss this point, it is necessary that the background of the case be given. Alfred Williams, employed by Caldwell Oil Company in Little Rock, operated a service station. About 1:00 A.M. on January 21, Lawrence Hobbs, a regular customer, came into the station. About thirty or forty minutes later, two men came in looking for a set of jumper cables. While all were present, a truck driver came in to get change. After he left, the two men supposedly looking for jumper cables, pulled a knife and a gun and robbed the station, placing Hobbs and Williams in the rest room. After being placed in the rest room, they were again threatened, but each victim assured the robbers that they did not know the latter, stating, "I never seen you before." The two heard a car start up. Hobbs testified:

> "I heard something say, 'Ugh', like my car. You have to double clutch it to put it in low gear. So, evidently, he didn't know how to drive my car. I said, 'Al, they got my car.' And I was fixing to go out the door and Al pushed me back and we was peeping up under the crack in the door and we didn't see no feet walking back and forth. So, he eased the door open and come on out. He was fixing to dial the police but the telephone wire was chopped loose. He took him a dime and went out on the outside to pay the phone and called the police."

It is argued that all of the essential issues were litigated in the first trial for robbery, and that the grand larceny trial relitigated the same issue. Appellant chiefly relies upon the case of *Turner* v. *Arkansas*, 407 U.S. 366, where this was the question at issue. Turner had been tried for murder, it being alleged that he killed a man

while robbing him. The jury returned an acquittal and Turner was then charged with robbery. He contended that a trial on this charge would constitute double jeopardy, but we disagreed. See *Turner* v. *State,* 248 Ark. 367, 452 S.W. 2d 317. A second appeal was taken from a trial court order denying the motion to dismiss the indictment for robbery, this time appellant presenting the complete transcript of the trial record in the murder charge. We held that our decision on the prior appeal was the law of the case. See *Turner* v. *State,* 251 Ark. 499, 473 S.W. 2d 904. In reversing, the United States Supreme Court said:

> "In the present case, petitioner was not charged with robbery at the first trial, but the State has stipulated that the robbery and murder arose out of 'the same set of facts, circumstances, and the same occasion.' The crucial question, therefore, is what issues a general verdict of acquittal at the murder trial resolved. The jury was instructed that it must find petitioner guilty of first-degree murder if it found that he had killed the decedent Yates either with premeditation or unintentionally during the course of a robbery. The jury's verdict thus necessarily means that it found petitioner not guilty of the killing. *** Had the jury found petitioner present at the crime scene, it would have been obligated to return a verdict of guilty of murder even if it believed that he had not actually pulled the trigger. The only logical conclusion is that the jury found him not present at the scene of the murder and robbery, a finding that negates the possibility of a constitutionally valid conviction for the robbery of Yates."

In the case now before us, the circumstances are entirely different. The robbery of the service station and the stealing of the automobile were two separate crimes, and while to a degree related, certainly were not the same offense. The crime of robbery was over before the automobile was stolen. The proof offered in the robbery charge would not sustain the charge of stealing the automobile, and we accordingly find no merit in this alleged error.

It is then asserted that the evidence was insufficient to sustain the grand larceny conviction, the argument apparently being based on the fact that no one testified that he actually saw appellant and his companion take the car. Of course, circumstantial evidence is sufficient if the circumstances are such that no other reasonable hypothesis can be reached. Here, Hobbs had driven his car to the station. After the robbery, he was made to go into the rest room. His testimony quoted in the preceding point establishes that, because of a deficiency in the clutch, he recognized the sound of the car as it started off immediately after the men had warned the two victims to remain in the rest room. The car was gone when he returned. These circumstances certinly presented a fact question for the jury, but in addition, Decker gave a written statement in which he said this car was used in the getaway.

## VII.

It is next contended that references to the robbery were improperly admitted in the trial for grand larceny and that such testimony had a prejudicial effect. We do not agree. A logical explanation of the circumstances of the taking of the car could not have been given without testimony first being presented about the robbery; the jury would never have known why the two men were in the rest room together and afraid to come out unless the jury had also known that the two men were there by force and threats of what would happen if they did come out. Only one brief paragraph is allotted to this argument.

## VIII.

It is then asserted that defendant's confession was improperly admitted in rebuttal, and that the State should have offered its entire case when putting on its evidence. The statutes dealing with the manner of proceeding in a criminal case after the oath is given the jury are Ark. Stat. Ann. §§ 43-2110—43-2114 (Repl. 1964). The first mentioned section provides that the prosecuting attorney shall make his opening statement; the next section provides that defendant or his counsel

may then make a brief statement for the defense; the next section authorizes the state to offer evidence in support of its case; next, the defendant offers evidence in support of his defense, and § 43-2114 provides:

> "The parties may then respectively offer rebutting evidence only, unless the court for good reason, in furtherance of justice, permit them to offer evidence upon their original case."

In *Lacy* v. *State*, 240 Ark. 84, 398 S.W. 2d 508, it was contended that the court erred in permitting the prosecuting witness to testify on rebuttal relative to a jacket allegedly worn by the appellant. This court quoted the contention and stated its answer to that contention as follows:

> "'. . . the alleged victim, testified that her attacker had on a cream colored sweater and tight pants; she made no reference whatsoever about a coat or jacket. After the appellant and his witnesses had taken the stand and testified that on the night of November 12th, that appellant had worn a blue jacket, the trial court, over the objections and exception of appellant, permitted the prosecuting witness to testify on rebuttal to the effect that appellant was wearing a coat or a jacket.'

> "Our statute (Ark. Stat. Ann. § 43-2114 (1947) says:

> 'The parties may then respectively offer rebutting evidence only, unless the court for good reason, in furtherance of justice, permit them to offer evidence upon their original case.'

> "This statute permits the Court, 'for good reason, in furtherance of justice,' to allow the State to reopen its case and offer new evidence. Even if the recalling of the prosecutrix to testify about the jacket which the defendant wore could be considered as new evidence, still the Court had a right to allow such to be offered; and the Court did not abuse judicial discretion in such ruling."

See also *Walker* v. *State*, 100 Ark. 180, 139 S.W. 1139, where we said:

> "Error of the court is assigned in permitting the State to introduce testimony not properly in rebuttal after defendant had rested his case. The statute (Kirby's Digest, § 2378) [4] authorizes the presentation of testimony in chief after the defendant has closed his case when that appears to be necessary 'in furtherance of justice,' and of that the trial court must be the judge. It rests within the sound discretion of trial courts to permit testimony to be adduced out of time, and the exercise of that discretion will not be disturbed by this court unless an abuse is shown."

We hold the contention to be without merit.

## IX.

It is next argued that the confession was taken in the robbery case but was improperly used in trial for grand larceny, the brief on behalf of Decker stating, "There is no evidence he was advised he was a suspect for grand larceny." The record reflects that Decker signed two "Rights Waivers" on July 16, one setting out that he had been advised that he was a suspect in an armed robbery and the other admitting that he had been advised that he was a suspect in a burglary and grand larceny case. It is not entirely clear whether the last mentioned waiver had reference to this particular instance of grand larceny, though it does appear that this is the case. Certainly, Decker knew that he was suspected of stealing the automobile at the service station since he included details in the written statement he signed. We find no prejudicial error.

The last two contentions deal with points raised in the Rule I hearing and have already been covered in this opinion.

---

[4]This statute reads identically with § 43-2114.

Finding no reversible error, the judgment is affirmed.

It is so ordered.