James MATTHEWS *v.* STATE of Arkansas

CR 77-7                                    549 S.W. 2d 492

Opinion delivered May 2, 1977
(In Banc)

*Harold L. Hall,* Public Defender, by: *Robert J. Govar,* Dep. Public Defender, for appellant.

*Bill Clinton,* Atty. Gen., by: *Gary Isbell,* Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. Appellant James Matthews was found guilty of burglary and grand larceny. At his trial, a confession was introduced in evidence after the trial judge had held that it was voluntary. The sole point for reversal is the contention that the court erred in so holding.

Appellant contends that his confession in this case was involuntary, not because he was not advised of his rights when he confessed on December 28, 1975, or because the confession was the result of threats, physical force or inducements offered at that time, but because he contends that he was under the influence of coercion some 11 months earlier, when he confessed to a crime for which he was never prosecuted.

Appellant is 21 years of age and reached the ninth grade in school. He was arrested and questioned by Deputy Sheriffs Stan Ledbetter and Cecil Dobbs. Dobbs said that he was out of the room during part of the time the interrogation was conducted and the confession obtained. Matthews testified that he was arrested in January of 1975, taken to the sheriff's office for the investigation of burglaries and saw Deputy Sheriffs Ledbetter, Pierce and West physically abusing Ricky Hood, who was also being interrogated about these burglaries. He said he saw them pull Hood's hair and hit him in the stomach and later heard Hood scream when they took him behind closed doors. Matthews said that when he was being interrogated, they pulled his hair and hit him on the back with a blackjack and also used their hands to hit him on the back. He had been arrested about 9:00 p.m. on Monday, confessed about 3:00 p.m. on Wednesday to having taken a CB radio from a car on a roadside and had been released at 5:00 p.m. on the same date, according to his testimony. He was not prosecuted for that crime and never heard about it again. He said that his current confession was induced solely because of what had happened on the previous occasion; that he was afraid of Ledbetter, Dobbs and Pierce, and was afraid that if he did not confess he would be beaten up again.

There was corroboration of the mistreatment of Ricky Hood by Hood and Michael Castleman, then an attorney in the public defender's office. Hood said that he and Matthews were at the sheriff's office on the same day and that when Jimmy and two others came out of the interrogation room into which they had been taken one at a time, their hair was "sticking out all over." Castleman testified about the physical condition and appearance of Hood after having been interrogated on this occasion. The only contradiction of this testimony was by Ledbetter, who denied that he had ever made any threats to Matthews at any time, that he had been in the presence of anyone who did or that he had been present when any member of the sheriff's office struck Matthews or pulled his hair. He was not sure whether he was present when Ricky Hood was interrogated, but did not see any officers strike him in an effort to get him to make a statement. He could not remember who else was present and did not know whether either Pierce or West was present. He could not remember the date, because Ricky Hood had been brought into the office at different times in connection with different offenses.

The real question presented is whether the state met its burden of proof. In *Smith v. State,* 254 Ark. 538, 494 S.W. 2d 489, we held that whenever the accused offers testimony that his confession was induced by violence, threats or coercion, then the burden is upon the state to produce all material witnesses who were connected with the controverted confession or give adequate explanation for their absence. We held in *Smith v. State,* 256 Ark. 67, 505 S.W. 2d 504 and *Russey & Way v. State,* 257 Ark. 570, 519 S.W. 2d 751 that an objection to the absence of officers who participated was not necessary; that an objection to the confession as being involuntary was sufficient to require the state to present all material witnesses or adequately explain their absence. In *Northern v. State,* 257 Ark. 549, 518 S.W. 2d 482, we held that it was up to the state, not the defendant, to produce the absent witnesses and applied the rule as to the burden on the state. Of course, neither Pierce nor West participated in obtaining the controverted confession.

It is well established that coercion can be accomplished psychologically as well as physically. Whether psychological coercion exists depends upon a weighing of circumstances of pressure against the power of resistance of the confessor. The question may be answered only by reviewing all the circumstances surrounding the confession. Whether a confession subsequent to one obtained by unlawful pressure is voluntary depends upon whether an inference as to the continuing effect of the coercive practices may fairly be drawn from the surrounding circumstances and is determined by a conclusion as to whether the accused, at the time of the second confession, was in possession of mental freedom to confess or deny his suspected participation in a crime. The effect of earlier abuse may be so clear as to forbid any inference other than that the later confession is involuntary. On the other hand, one making a confession which is involuntary is not perpetually disabled from making a voluntary confession after the conditions of abuse have been removed. Lapse of time is an important consideration. See Annot, 1 L. Ed. 2d 1735 (1957); 4 L. Ed. 2d 1833 (1960); 12 L. Ed. 2d 1340 (1965); 16 L. Ed. 2d 1294 (1967); 29 Am. Jur. 2d 595, Evidence § 543; 23 CJS 194, Criminal Law § 817 (10).

We cannot say that the holding of the trial court was clearly against the preponderance of the evidence before it. The question whether the previous incident was too remote to consider in connection with an interrogation about a wholly unrelated crime was a matter for the trial court's determination after hearing the witnesses and we cannot say that the trial judge erred in that respect. We decline to extend the rule of *Smith, Smith, Russey* and *Northern* to a case where the accused has been at liberty for eleven months after his alleged mistreatment and the interrogation is about a wholly unrelated crime.

The judgment is affirmed.