Dennis Earl CAGLE *v.* STATE of Arkansas

CA CR 79-109                    594 S.W. 2d 573

Opinion delivered January 30, 1980
Petition for Review denied March 3, 1980
Petition for Rehearing denied March 5, 1980
Released for publication March 5, 1980

1146

*Michael E. Surguine,* for appellant.

*Steve Clark,* Atty. Gen., by: *Robert J. De Gostin,* Asst. Atty. Gen., for appellee.

JAMES H. PILKINTON, Judge. Appellant Dennis Earl Cagle and another person were charged by information with the offense of Criminal Attempt to Commit Burglary and Theft, on or about the 12th day of December, 1978, by cutting the screen and partially opening a window of a house belonging to Harry McAdams, Jr., in Newport, Arkansas. Appellant requested, and the court granted, a separate trial.

Cagle also filed a motion to suppress any statements taken from him while in custody. Pursuant to *Jackson* v. *Denno*, 378 U.S. 368 (1964), an in-chambers hearing was held on that motion before appellant's trial began. The court denied appellant's motion to suppress.

A trial by jury was held. In addition to other testimony, the State introduced into evidence a confession made by the defendant three days after his arrest. The jury returned a verdict finding Cagle guilty as charged. He was sentenced to six years imprisonment. He appeals contending that the trial court erred in admitting his confession into evidence.

On the afternoon of December 12, 1978, Roger Brand returned to his home, looked across the street at the McAdams house and noticed two people trying the windows and door of the house. Brand then saw the two running through the McAdams back yard, and then through a graveyard beyond. Moments later, Brand and McAdams confronted Cagle and Ronnie Gates in the graveyard. Police officers arrived and arrested the two suspects. The officers then returned to the McAdams house where they discovered the screens on one of the windows had been cut, the window was partially opened, and there were some puncture holes on the insulation surrounding the window. Appellant Cagle had a large "Buck" knife in his possession at the time of his arrest.

At the *Denno* hearing, the State had the burden of showing that appellant's confession was made after a voluntary, knowing and intelligent waiver of the right to remain silent. *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

The proof offered by the State at the hearing revealed that appellant was arrested on December 12, 1978. Immediately upon his arrest, Officer Jerry Long read to appellant his constitutional rights from a so-called Miranda Warning Card, which the officers kept for that purpose. When the officer and appellant arrived at the station house at approximately 5:20 p.m. on the same day, Officer Long advised appellant of his constitutional rights a second time. Appellant declined to make any statement at that particular time.

Appellant was placed in jail, and three days later Officer William Cardwell removed appellant from his cell and took him to the officer's office. Cardwell advised appellant of his rights, and then asked if he wished to make a statement. Appellant said that he did, and the statement was taped. After the tape was replayed for appellant, a transcript of the statement was typed. Officers Long and Cardwell were present when the statement was made. Chief Wilson was in an adjoining office.

The issue on appeal is whether the trial court properly found, based on the totality of the circumstances, that appellant's confession was voluntary and hence admissible into evidence. *Degler* v. *State,* 257 Ark. 388, 517 S.W. 2d 515 (1974).

In the case before us appellant's confession was given without counsel. Therefore, the proper test is whether appellant was effectively warned of his rights and knowingly and willingly decided to waive them. *United States* v. *Harden,* 480 F. 2d 649 (8th Cir. 1973). The trial court found that appellant did so waive his rights. He was under no disability. Appellant testified at trial that his rights were explained to him before the confession was given, and the transcript of the confession bears this out. There was no contention at trial, nor is it argued on appeal, that appellant was not advised of his rights or that he failed to understand these rights although appellant did not sign a written waiver form. However desirable it is to obtain a written waiver of rights, failure to do so does not invalidate a voluntary confession where there is no contention that the rights were not explained or understood.

Relying on his own testimony at trial, appellant contends that the Newport Police officials used psychological coercion to wring the confession from him. Whether such psychological coercion exists is determined by weighing all the circumstances surrounding the confession to resolve whether the circumstances of pressure overbears the power of resistance of the accused. *Matthews* v. *State,* 261 Ark. 532, 549 S.W. 2d 492 (1977).

The evidence presented revealed that appellant was 18 years old and had completed the eighth grade with passing marks. A review of appellant's testimony at the *Denno* hearing and at the trial gives no indication that appellant suffered from any mental disability, and none is claimed. The testimony shows that appellant is of average intelligence and has a good command of the English language. The record also reveals that appellant was no stranger to the criminal justice system, having been convicted of a prior felony offense. It is clear to us that appellant had the mental capacity and experience to understand, appreciate and intelligently waive his constitutional rights. But appellant contends his will was overborne by alleged attacks on his accomplice and threats to file a possession of marijuana charge against him, and by an alleged threat that the officers would see that he received a twenty year sentence on the present charge. Officers Caldwell and Wilson specifically denied that any such threats were made or that coercion was present. Mr. Ralph Black, who was appellant's probation officer, testified that no such threats occurred while he was present. The confession itself reveals that no threats or promises were made.

The testimony of appellant that the officers used coercion is not entitled to more weight than the testimony of the officers that they did not. *Smith* v. *State,* 256 Ark. 67, 505 S.W. 2d 504 (1974). See also *Decker* v. *State,* 255 Ark. 138, 499 S.W. 2d 612 (1973). In such cases the trial court determines the credibility of the witnesses. *Gardner* v. *State,* 263 Ark. 739, 569 S.W. 2d 74 (1978).

Custody alone is not sufficient to render invalid an otherwise voluntary confession. The record shows that on the third day of his incarceration, appellant was advised of his *Miranda* rights a third time, and was confronted with a .45 caliber pistol which had been stolen. At that time appellant voluntarily made the confession which was subsequently admitted into evidence at his trial. The trial court found that he was not acting under fear or coercion.

We have considered the nature of the questioning, the length of interrogation, the manner in which the warnings were given, and all testimony, factors, and circumstances

1150

which would have any bearing on appellant's allegation of deception, coercion or inducement. In other words, we have carefully reviewed the total circumstances surrounding the confession of appellant and have concluded that the trial court's finding of voluntariness is not against the preponderance of the evidence. *Degler* v. *State, supra.*

Appellant also contends that all material witnesses to the confession were not present at the *Denno* hearing. The evidence presented at this hearing reveals there were four material witnesses to appellant's confession. These were Jerry Long, William Cardwell, Gary Wilson and Ralph Black. Except for the appellant, no other persons were present during the taking of the confession or immediately prior thereto. However, appellant says that another person was a material witness. He testified that two days before making his confession, an unidentified jailer "jumped on" Ronnie Gates, his accomplice. Appellant further testified that Officer Gary Wilson threatened appellant after the unidentified jailer's attack on Gates. As already noted, Wilson was presented and testified at the *Denno* hearing and denied that any threats were made.

In *Bushong* v. *State,* 267 Ark. 113, 589 S.W. 2d 559 (1979), the Arkansas Supreme Court said:

[T]here must be some connection between the witness and the alleged acts of coercion or an opportunity to observe the alleged coercion.

There is insufficient evidence in this record to connect the alleged acts of the unidentified jailer to the confession which occurred two days later. We are persuaded that all material witnesses to appellant's confession were present at the *Denno* hearing as required by law. *Bushong* v. *State, supra.*

Finding no error, the judgment of the circuit court is affirmed.

HOWARD, NEWBERN and HAYS, JJ., dissent.

GEORGE HOWARD, JR., Judge, dissenting. I am unable to join the majority in affirming appellant's conviction because

I am persuaded that the trial court erred in finding appellant's purported confession free and voluntary. The State's evidence falls short of establishing the voluntariness of the statement by a preponderance of the evidence.

During the *Denno* hearing, appellant was requested to relate those things that happened, while he was in jail, that "made you feel like you had to make a statement, that you had to confess?"

In reply, appellant said:

A. A couple of days before I made them statements, Ronnie Wayne Gates got jumped on by the jailer, and Wilson said if I am going to have to let one of the guilty ones go to get you, Cagle, I will. He said myself, I think you was hired to come to my town and ransack it.[1]

Q. Was there anything that made you feel like that you had to confess, that you were in such a fix that you had better make a statement?

A. Yes, Sir. I found a bag of dope over there in the cell. Before I turned it in they found it, and they used that on me. They said if you confess, I will drop this dope charge, and they said if you don't I'll see that they give you twenty years.

On cross-examination, appellant testified:

Q. You said Ronnie Gates got jumped on?

A. Right.

Q. But nobody jumped on you?

A. No. He had threatened me.

Q. Well, Ronnie Gates had threatened you?

---

[1]Ronnie Wayne Gates is an associate and co-defendant of appellant who was also in jail. Wilson is Chief of Police Gary Wilson of Newport.

A. No, the jailer had. He said you will be next if you don't settle down, and I wasn't doing nothing but laying on my bunk.

Q. Okay, but that didn't have anything to do with you giving a statement or confession, did it?

BY MR. SURGUINE:

Objection, Your Honor, I think it does, I think it is very relevant.

BY THE COURT:

Overruled. You may answer.

Q. That didn't have anything to do with you giving — they were just saying settle down, they weren't saying we are jumping on you to make you confess?

A. I didn't know that.

Q. Well, he never did say anything about a confession, did he?

A. Well, I am saying I didn't know that. I didn't know what he was jumping on me for.

Q. Well, he said to settle down; didn't he; isn't that your own words?

A. Yes, but I wasn't doing nothing.

Q. Okay, he said to settle down, you weren't doing nothing, he didn't ask you to make a statement, did he?

A. When did he ask me that, when I was laying on my bunk.

Appellant acknowledged, on cross-examination, that he had not informed the jailer about discovering the marijuana in his cell and explained:

"A. No, I was thinking about turning it in because they were pretty tee'd off at me for not confessing."

Ralph Black, parole officer and a rebuttal witness called by the State, testified about an incident that took place when he interviewed appellant, prior to the purported confession. Mr. Black had taken appellant from the jail cell and, during the interview, the Chief of Police confronted appellant with the marijuana allegedly found in appellant's cell. Mr. Black was asked by the State:

Q. Do you recall Chief Wilson coming in on that date during the interview with a can of marijuana or sack of marijuana?

A. I remember the Chief coming in and mentioning that he had some marijuana that had been found in Cagle's possession.

Q. And then what occurred?

A. I asked Cagle if this marijuana was his and he said that he had had it in his possession, he found the marijuana, and the Chief said they were going to run fingerprints on it and it would determine, and I asked Cagle about it and Cagle said he had had it in his possession. *I thought perhaps the material had been smuggled into the jail as contraband and I asked him where he had got it and he said he had found it there in the jail, and I asked him what he intended to do with it and he said well, he was going to use it for his later purposes at a later time.* (Emphasis added)

Appellant also testified:

Q. Dennis, when you were taken into custody and taken down to the police station, was there any point that first day when you asked them to give you a lawyer, that you wanted a lawyer?

A. After they had locked me up.

Q. That was the first day?

A. Right.

The undisputed evidence shows that appellant, a white youth, 18 years of age, (1) has completed eight years of schooling, (2) had been in jail for three days before he agreed to confess while rejecting all previous requests for a statement, (3) was not afforded an attorney although a request for an attorney was made on his first day of incarceration — this testimony was not refuted by the State when the State presented rebuttal testimony, (4) a can or sack or marijuana mysteriously appeared in appellant's jail cell and, according to appellant's testimony, was told, by a police officer, that if he confessed "I will drop this dope charge, and . . . if you don't I'll see that they give you twenty years.", (5) during the interrogation of appellant on December 15, 1978, which resulted in the purported confession, appellant was seated at a desk where a .45 caliber gun had been placed, (6) appellant was told by the Chief of Police "if I am going to have to let one of the guilty ones go to get you, Cagle, I will. . . . I think you were hired to come to my town and ransack it.", and (7) appellant's co-defendant, Ronnie Wayne Gates, was assaulted by a jailer and the same jailer threatened appellant, according to appellant, without cause or provocation — this testimony has not been refuted by the State. Moreover, the State did not call the jailer to testify in seeking to establish the voluntariness of the confession. The failure to call the jailer, as a witness, was fatal to the State's case. The jailer was a material witness; the unprovoked threats of physical violence, as related by appellant, stand uncontroverted. To argue that the jailer was not a material witness because he was not present when appellant gave the confession does not come to grips with the issue. For example, the State called Chief of Police Gary Wilson, as a witness, although he was not present when appellant gave the purported confession. In articulating the reason for calling the Chief of Police, the prosecuting attorney said: "I have called you in order to comply with the law that we should have everybody here that had anything to do with these statements. . . ."

The Chief of Police was in an adjacent room while appellant was making the confession, but had talked to appellant prior to December 15th, just as the jailer had done on

the occasion the purported threat was made to appellant. It is plain that the trial judge regarded appellant's testimony, relating to the assault of Ronnie Wayne Gates by the jailer, and the threats the jailer made to appellant as material and relevant to the *Denno* hearing for the trial court directed appellant, over objections, to answer the following question, on cross-examination, regarding the threats purportedly made by the jailer: "Q. Okay, but that didn't have anything to do with you giving a statement or confession did it?" The failure to call the jailer alone dictates a reversal in this case.

An in-custody confession is presumed to be involuntary and the burden is on the State to show that the statement was voluntarily made. Furthermore, the State has the burden to produce all material witnesses who were connected with the controverted confession or give adequate information for their absence. *Smith* v. *State,* 254 Ark. 538, 494 S.W. 2d 489 (1973).

The circumstances in this case, prior to and during the purported confession, are classic examples of those techniques that psychological coercion is grounded upon in order to destroy the will power through fear. Torture of the mental processes can be just as devastating as force upon the body.

In *Payne* v. *State of Arkansas,* 356 U.S. 560 (1958), the United States Supreme Court in reversing the appellant's conviction which was based upon a confession made the following observation:

> The use in a state criminal trial of a defendant's confession obtained by coercion — whether physical or mental — is forbidden by the Fourteenth Amendment.

I have been authorized to state that HAYS and NEWBERN, JJ., join in this dissent.