Harry Jerry JONES v. STATE of Arkansas

CA CR 85-5                                    692 S.W.2d 775

Court of Appeals of Arkansas
Division I
Opinion delivered July 3, 1985
[Supplemental Opinion on Denial of Rehearing August 28, 1985.]

*John H. Bradley*, Deputy Public Defender, for appellant.

*Steve Clark*, Att'y Gen., by: *Joel O. Huggins*, Asst. Att'y Gen., for appellee.

DONALD L. CORBIN, Judge. Appellant Harry Jerry Jones was convicted of aggravated robbery by an Osceola District, Mississippi County jury and sentenced to twenty years imprisonment. Appellant raises seven points for reversal on appeal.

## I.

Appellant argues that the trial court erred in reopening the case and admitting further testimony after the case had been submitted to the jury.

After the case was submitted to the jury, the jury returned to the courtroom to ask the trial judge two questions. The jury wanted to know (1) if witnesses who had identified the appellant during the trial had identified him at any other time, and (2) if appellant had a gold tooth. The trial judge properly explained to the jury that supplementary evidence on these issues could not be given and that they should concern themselves only with the evidence before them. After the jury resumed deliberation, the prosecution made a motion to reopen the case for the presentation of additional evidence. This motion was granted and the jury returned to hear the testimony of police officers Pugh and Womack that appellant had a gold front tooth on the night of his arrest and that a gold tooth was part of the description of the robber given by one of the witnesses. The jury resumed deliberation and shortly returned a verdict of guilty.

Reopening a case for the taking of additional evidence after the case has been submitted to the jury is a matter within the sound discretion of the trial court and a ruling by the trial court on such a matter will not be reversed absent an abuse of

discretion. *Curtis* v. *State*, 279 Ark. 64, 648 S.W.2d 487 (1983); *Powell* v. *State*, 270 Ark. 236, 605 S.W.2d 2 (1980); *Williams* v. *State*, 262 Ark. 219, 555 S.W.2d 231 (1977); *Whittaker* v. *State*, 173 Ark. 1172, 294 S.W. 397 (1927); *Smith* v. *State*, 162 Ark. 458, 258 S.W. 349 (1924); *Teel* v. *State*, 129 Ark. 180, 195 S.W. 32 (1917); *Garner* v. *State,* 97 Ark. 63, 132 S.W. 1010 (1910). However, reopening a case at this stage of the proceedings must be done with the utmost caution. The orderly progression of our trial process on which we so heavily rely, would be seriously undermined were requests to reopen casually granted. In addition, evidence heard at this time may be given undue emphasis by the jury prejudicing the party against whom it is offered. These considerations must be carefully weighed against the desirability of giving the jury all possible relevant evidence with which to conduct its truth-finding process. Our Supreme Court has held that evidence which is not relevant, is merely cumulative or was not diligently pursued during the trial does not provide a proper basis for reopening a case. *Curtis* v. *State*, 279 Ark. 64, 648 S.W.2d 487 (1983); *Powell* v. *State*, 270 Ark. 236, 605 S.W.2d 2 (1980); *Smith* v. *State*, 162 Ark. 458, 258 S.W. 349 (1924). Alternatively, evidence which was relevant, not cumulative or in essence constituted new evidence has been deemed admissible. *Williams* v. *State*, 262 Ark. 219, 555 S.W.2d 231 (1977).

In this case, we find that the evidence admitted was not particularly relevant. During the trial, the only mention of a gold tooth was made by Lt. Bobo who testified that he was told the robber had a gold tooth as part of the description given by one of the witnesses to the robbery. No mention was made of appellant's having a gold tooth. In their testimony none of the witnesses mentioned the gold tooth in describing the robber or in identifying the appellant. More importantly perhaps, was the State's lack of diligence in pursuing this line of questioning. The State had ample opportunity to bring the gold tooth to the attention of the jury in both the testimony of the police officer and in that of the eyewitnesses. In light of the doubtful relevance of the after-admitted testimony and the lack of diligence shown by the State in presenting this evidence during trial, it was inappropriate to reopen the case for the admission of evidence once the case went to the jury. We reverse on this point.

## II.

Appellant argues that the trial court erred in failing to suppress the eyewitness identification because it was tainted by a prejudicial lineup identification. Appellant's argument is predicated on the rule that where a lineup was not conducted with complete fairness to the accused, the State has the burden of proving by clear and convincing evidence that the witness's subsequent identification was based on independent observations and not tainted by the lineup procedure. *Montgomery v. State*, 251 Ark. 645, 473 S.W.2d 885 (1971). Thus the question has two parts: whether the lineup procedure was so unfair as to taint subsequent identifications; and if so, whether the State met its burden in proving the subsequent identifications reliable.

There are many factors to be considered in determining the reliability of a lineup procedure: the opportunity of a victim to observe the crime and its perpetrator; the lapse of time between the crime and the lineup; discrepancies between descriptions given the police and the defendant's true physical characteristics; the occurrence of pretrial misidentification; the certainty of the witness in identifying the accused; and the totality of the facts and circumstances regarding the identification. *Cook v. State*, 283 Ark. 246, 675 S.W.2d 366 (1984), citing *Glover v. State*, 276 Ark. 253, 633 S.W.2d 706 (1982).

In this case the lineup was conducted within two days of the crime; the crime occurred under circumstances in which the witnesses had ample opportunity to observe the suspect; the witnesses' description of the suspect closely described appellant and the witnesses were positive of their identifications both in the lineup and during the trial. Appellant argues that the lineup identification by witnesses was impermissively suggestive because of the differing hairstyles, footwear and demeanor of the individuals in the lineup. There were six dark-skinned individuals approximately 5 feet 10 inches to 5 feet 11 inches tall, with short afro type hairstyles or braided hair. All were dressed in detention uniforms, some wearing shower shoes and others wearing other types of footwear. All put on sunglasses for the lineup. We cannot see that this arrangement was suggestive enough to make appellant's identification inevitable. *See, Glover v. State, supra.* Rather, considering the factors listed above, we believe the lineup

to be reliable. Having so found, we need not decide whether the State met its burden in proving the in-court identifications to be independently based. "Reliability of the evidence is the linchpin in determining its admissibility." *Matthews* v. *State*, 275 Ark. 1, 627 S.W.2d 20 (1982). We find the identifications to be reliable and therefore admissible.

## III.

Appellant argues that the trial court erred in failing to suppress appellant's custodial identification of his belongings. After being taken into custody, given his *Miranda* rights and signing a rights form, appellant identified a jacket and wallet found with the stolen money as his own. Appellant argues that he was not afforded the opportunity to remain silent. We note that the rights form signed by appellant contains no express language acknowledging his desire to waive his right to remain silent. In *Fleming* v. *State*, 284 Ark. 307, 681 S.W.2d 390 (1984), our Supreme Court expressed a preference for use of forms with such express language, but the accused's execution of such a form is not a prerequisite to a finding that a statement was voluntary. *Cagle* v. *State*, 267 Ark. 1145, 594 S.W.2d 573 (Ark. App. 1980). Our Supreme Court has found it to be sufficient if, looking at the totality of the circumstances, the accused voluntarily and intelligently waived his right to remain silent. *Cagle, supra.* In this case, appellant, who was familiar with the criminal justice system, was advised of his *Miranda* rights on more than one occasion. He signed a rights form stating that he understood his rights. He did not request an attorney and voluntarily answered questions from the police officers. Viewing the circumstances overall, we find appellant knowingly waived his right to remain silent.

## IV.

Appellant contends that the court erred in allowing testimony by police officers of the description of the robber given by witnesses to the robbery. Appellant argues that such testimony was hearsay under Ark. Unif. R. Evid. Rule 801 and should have been excluded. The testimony was elicited in response to the directive "explain what information you had with regard to the robbery, just what action you took." The officer's testimony was given to show what information he had acted on, not for the truth

of the statements therein. Testimony of such a conversation not offered to prove the truth of the matter asserted is not hearsay under Rule 801. *Worring* v. *State*, 2 Ark. App. 27, 616 S.W.2d 23 (1981).

## V.

Appellant contends that the trial court erred in allowing Officer Womack to testify that Ruthie Mae Parks, appellant's alibi witness, had been drinking when he questioned her about appellant's whereabouts during the robbery. Appellant argues that the officer's conclusion was conjecture without proper foundation. It is clear under Ark. Unif. R. Evid. Rule 701 that a lay person can testify in the form of opinion or inference if that testimony is rationally based upon his perception and is helpful to a clear understanding of his testimony or the determination of a fact in issue. Officer Womack questioned Mrs. Parks for some period of time and had ample opportunity to develop an opinion as to her physical state. His perception of her physical state was helpful to the jury in assessing both his credibility and hers. Thus Officer Womack's testimony meets the requisites set out in Rule 701. We would also note that appellant failed to take advantage of his opportunity on cross-examination to question Officer Womack about the basis for his opinion. We find no error here.

## VI.

Appellant contends that the trial court erred in submitting the question of the accomplice status of witness Ricky Parks to the jury. Appellant raises this issue for the first time on appeal. A review of the record fails to reveal an objection by appellant to the jury instruction given on Parks' accomplice status or a request for an instruction that Parks was an accomplice as a matter of law. Issues raised for the first time on appeal cannot be addressed. *Wicks* v. *State*, 270 Ark. 781, 606 S.W.2d 366 (1980).

## VII.

Appellant had been previously convicted of robbery and armed robbery in Missouri. Appellant argues that the trial court erred in failing to grant appellant's motion in limine which would have suppressed the use of these prior convictions for

impeachment purposes. It is clear under Ark. Unif. R. Evid. Rule 609(1)(a) that a prior conviction is admissible to attack the credibility of a witness if the conviction was for a crime punishable by death or more than one year's imprisonment and the court determines that the probative value of this evidence outweighs its prejudicial effect. *Bell* v. *State*, 6 Ark. App. 388, 644 S.W.2d 601 (1982). The trial court has considerable discretion in determining whether the probative value of the prior conviction outweighs its prejudicial effect and will not be reversed absent an abuse of discretion. *Bell, supra.*

Following, are some factors which should be considered by the trial court in determining whether the probative value of the evidence outweighs its prejudicial effect:

1. Impeachment value of the prior crime.

2. The date of the conviction and the witness's subsequent history.

3. The similarity between the prior conviction and the crime charged.

4. The importance of the defendant's testimony.

5. The centrality of the credibility issue.

*Washington* v. *State*, 6 Ark. App. 85, 638 S.W.2d 690 (1982).

Appellant relies on *Jones* v. *State*, 274 Ark. 379, 625 S.W.2d 471 (1981). In *Jones, supra*, the Arkansas Supreme Court held that the prejudicial effect of a nolo contendre plea for sexual abuse of a small boy outweighed its probative value where the appellant was again charged with sexual abuse of a child. We believe *Jones* is distinguishable. There appellant also had two prior convictions for other felonies which would not have been suppressed had he testified. Because the other felony convictions could be used to impeach his credibility, the probative value of the sexual abuse conviction was greatly lessened. Also, sexual abuse of a child, being particularly loathsome, is one of those crimes for which a jury might be especially inclined to believe "if he did it once he'd do it again."

The case at bar falls in that category of cases where the credibility of the defendant is critical and the nature of the prior

convictions is such that the danger of extra prejudice does not attach to its admission as it does with particularly loathsome crimes like sexual abuse of children. *See, Smith* v. *State*, 277 Ark. 64, 639 S.W.2d 348 (1982); *Bell, supra*; *Washington, supra*. The appellant's credibility was critical in Harry Jones' case. His convictions are all dated within the last seven years, the most recent having occurred in 1982. The convictions are for similar crimes but the nature of the crime is such as to provoke no particular prejudice. Appellant's testimony would have been in direct conflict with that of other witnesses had he testified. Appellant's credibility would have been critical had he testified. These facts provide ample basis for the trial court's decision that the probative value of his prior convictions outweighed any possible prejudice.

We reverse on point one for a new trial.

Reversed and remanded.

CRACRAFT, C.J., and COOPER, J., agree.

Supplemental Opinion on Denial of Rehearing
August 28, 1985

695 S.W.2d 386

DONALD L. CORBIN, Judge. In our original opinion we did not consider appellant's argument that the trial court erred in submitting the issue of the accomplice status of witness Ricky Parks to the jury. Appellant correctly points out in his petition for rehearing that this issue was raised and should be considered.

Appellant offered AMCI 402 which would have instructed the jury that Parks was an accomplice as a matter of law and that his testimony required corroboration in order to convict appellant. The court refused this instruction and gave AMCI 403 which instructed the jury that if it found Parks to be an accomplice his testimony had to be corroborated in order to convict appellant.

■ Parks testified that he didn't know appellant was going to rob a store, that appellant often talked along those lines but never did anything, and that his knowledge of the robbery came only after it had been committed. This testimony was sufficient to put Parks' status as an accomplice in dispute. The standard instruction on corroboration when the accomplice status of a witness is in dispute must be given when the witness' status as an accomplice is in dispute. One's status as an accomplice is a mixed question of law and fact and the issue must be submitted to the jury where there is any evidence to support a jury's finding that the witness was an accomplice. *Earl* v. *State*, 272 Ark. 5, 612 S.W.2d 98 (1981). The trial court should not instruct the jury that a witness is an accomplice as a matter of law if there is any dispute on that point. *See, Johnson & Keeling* v. *State*, 259 Ark. 773, 536 S.W.2d 704 (1976); *Odom* v. *State*, 259 Ark. 429, 533 S.W.2d 514 (1976). In the case at bar Parks' status as an accomplice was clearly disputed. Thus, the trial court correctly instructed the jury and we find no merit to this point.

Not knowing what evidence will be submitted on remand we will not anticipate what instructions may be proper if the case is retried.

CRACRAFT, C.J., and COOPER, J., agree.