Kenneth Joel RUSHING *v.* STATE of Arkansas

CR 98-1312                                    992 S.W.2d 789

Supreme Court of Arkansas
Opinion delivered June 24, 1999

278

*Jim Pedigo*, Public Defender, for appellant.

*Mark Pryor*, Att'y Gen., by: *Mac Golden*, Ass't Att'y Gen., for appellee.

R AY THORNTON, Justice. Appellant, Kenneth Joel Rushing, was convicted of murder in the first degree for stabbing William Jack Allen to death in rural Miller County. Appellant was sentenced to life imprisonment and brings this appeal asserting that the trial court erred in denying his motion to suppress his inculpatory statements because the State did not meet its burden of proof that he made a knowing and intelligent waiver of his right to remain silent. We find no reversible error, and affirm.

Appellant makes no challenge to the sufficiency of the evidence; however, a review of pertinent facts will be helpful in understanding the case. Following an afternoon of heavy drinking on Saturday, March 15, 1997, appellant and Jack Allen pulled appellant's red pickup truck over to the shoulder of Highway 134. A fight began in the ditch beside the road and continued into an adjoining field. Allen was stabbed more than twenty-five times, and his body was left in the field. Sheriff H. L. Phillips was driving on Highway 134 about dusk that evening when a red pickup truck passed him. The Sheriff lost sight of the vehicle near Bryan Thompson's home.

The following morning, Sunday, a driver notified the police that a body was in the field near Highway 134, and the police began their investigation. Based on information that the victim and appellant had been drinking together on the previous day,

Officer McWhirter of the Arkansas State Police went to appellant's house to see if he knew anything about the victim's death or if he had seen the victim. Appellant said that he had been with the victim Saturday afternoon, and that some guys in a four-wheel-drive pickup pulled up behind them. Appellant said the men looked like they were from New York City and that the victim had left with them in their truck. Appellant continued, saying that his truck had broken down and was left at Mr. Thompson's house.

At this point, the officers returned to the murder scene. Soon after their return, appellant sped by the scene driving his wife's car. The police followed appellant to Mr. Thompson's home, where appellant's red pickup truck was parked. There was an abundance of mud and blood inside the cab of the truck as well as on the left side of the vehicle. Appellant consented to a search of his truck. Captain Toby Giles, of the Miller County Sheriff's Office, told investigator Nicholas to read appellant his *Miranda* rights and appellant was arrested. Later, DNA comparisons showed that the blood found inside the truck cab was one trillion times more likely to belong to the victim than any other person.

The reading of appellant's *Miranda* rights and his response that he understood those rights was witnessed by Sheriff Phillips, Captain Giles, Deputy Thomas Clay, and Officer McWhirter. All of the officers testified that they witnessed investigator Nicholas reading appellant his *Miranda* rights, that he said that he understood the rights, and that he appeared to understand his rights. Appellant was then transported to the sheriff's department.

After arriving at the department, Captain Giles explained the nature of the charges, asked appellant if he had any questions, and whether he wanted an attorney. The reading of his *Miranda* rights was not repeated. Appellant replied that he did not want an attorney, and again acknowledged that he understood his rights. Appellant declined to have his statement recorded but agreed to give a written statement. Officer McWhirter wrote down the statement, read it to appellant, and allowed appellant to look over

the statement. Appellant then signed the statement, which was witnessed by Captain Giles and Officer McWhirter.

■ Whether appellant knowingly and intelligently waived his rights must be determined by the totality of the circumstances. *Mauppin v. State*, 309 Ark. 235, 831 S.W.2d 104 (1992); *Smith v. State*, 286 Ark. 247, 691 S.W.2d 154 (1985). Our standard of review is whether the circuit court's finding that the waiver of rights was knowingly and intelligently made was clearly against the preponderance of the evidence. *Mauppin, supra; Ryan v. State*, 303 Ark. 595, 798 S.W.2d 679 (1990).

■ The burden is on the State to show that a defendant's confession was made after a voluntary, knowing, and intelligent waiver of the right to remain silent. *Cagle v. State*, 267 Ark. 1145, 594 S.W.2d 573 (1980). As was the case in *Cagle*, appellant's confession was given without counsel. The test is whether appellant was effectively warned of his rights and knowingly and willingly decided to waive them. *Id.* (citing *United States v. Harden*, 480 F.2d 649 (8th Cir. 1973)). The *Cagle* court noted that while obtaining a written waiver of rights is desirable, the failure to do so does not invalidate a voluntary confession where there is no contention that the rights were not explained or understood. *Id.* at 1148. As was the case in *Cagle*, here appellant does not claim that he did not understand his rights, but argues that the State did not prove that he waived them. Again, we note that a signed waiver form is not required to have a voluntary confession. *Id.*

■ In *Clay v. State*, 318 Ark. 122, 883 S.W.2d 822 (1994), we reiterated that there are two separate issues regarding the waiver of *Miranda* rights:

> Only if the 'totality of the circumstances surrounding the interrogation' reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Id.* (citing *Moran v. Burbine*, 475 U.S. 212 (1986)).

■ We then stated that the "totality of the circumstances" review mandated an inquiry into an evaluation of "age, experi-

ence, education, background, and intelligence, and into whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights. A court must look at the totality of the circumstances to see if the State proved that a defendant had the requisite level of comprehension to waive his Fifth and Sixth Amendment rights." *Clay, supra* (citations omitted).

■ Relying on *Clay,* we pointed out in *Lammers v. State,* 330 Ark. 324, 955 S.W.2d 489 (1997), that there is indeed a difference between the contention that a statement was made involuntarily and the contention that an accused did not knowingly and voluntarily waive his right to remain silent. Appellant does not argue that his statement was involuntary. Rather, he argues that he did not waive his right to remain silent. This argument focuses upon whether the waiver was made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it, as well as whether the accused made the choice, uncoerced by police, to waive his rights. *Lammers, supra.* (citing *Clay v. State,* 318 Ark. 122, 883 S.W.2d 822 (1994)).

■ Appellant is thirty-seven years old, has a ninth-grade education, and an I.Q. of 80. Appellant argued that a head injury received several years earlier had reduced his mental capacity. We have previously held that while mental capacity is a factor we consider, it alone is not sufficient to suppress a confession. *Misskelley v. State,* 323 Ark. 449, 915 S.W.2d 702 (1996). Likewise, a low score on an intelligence-quotient test does not mean that a suspect is incapable of voluntarily making a confession or waiving his right. *Id.* (citing *Oliver v. State* 322 Ark. 8, 907 S.W.2d 706 (1995); *Hart v. State,* 312 Ark. 600, 852 S.W.2d 312 (1993); *Hill v. State,* 303 Ark. 462, 798 S.W.2d 65 (1990)). Appellant was questioned three hours after receiving the *Miranda* warnings and gave his statement in forty-five minutes. We note that appellant was familiar with criminal procedures, having previously received three D.W.I. convictions. He was coherent while giving his statement and there was no allegation that he was coerced, threatened,

or promised anything for giving a statement. Officer McWhirter stated that he had participated in several hundred interviews and that it appeared appellant was making his statement voluntarily. He further testified that appellant said he understood his rights.

The totality of the circumstances leads us to conclude that the trial court's finding that appellant voluntarily waived his right to remain silent was not clearly against the preponderance of the evidence. Therefore, the trial court is affirmed.

*Rule 4-3(h)*

As required by Ark. Code. Ann. § 16-91-113(a) and Rule 4-3(h) of the Rules of the Arkansas Supreme Court, the entire record has been reviewed for other reversible errors and, finding none, the Court affirms the verdict and sentence of the jury.

Affirmed.