PAUL MOORE ET AL *v.* STATE OF ARKANSAS

5611

472 S.W. 2d 940

Opinion delivered November 22, 1971

*R. H. Hixon, Donald Goodner* and *Donald Poe,* for appellants.

*Ray Thornton,* Attorney General; *Fred H. Harrison,* Asst. Atty. Gen., for appellee.

CARLETON HARRIS, Chief Justice. Appellants, Billy E. Hutson, Paul Moore, Larry Cunningham, Johnny Wayne Cunningham and Dorothy Lois Moore Little, appeal

from a judgment wherein Hutson, Moore and Larry Cunningham were convicted of the crimes of burglary and grand larceny, being sentenced to two years for burglary and one year for grand larceny, and Johnny Wayne Cunningham and Dorothy Lois Moore Little were convicted of grand larceny, being sentenced to one year each. The information charged the first three with breaking and entering a building owned by Sam Rice with the felonious intent to commit grand larceny, and the larceny count charged all appellants with stealing $93.75 in cash and ten cases of Budweiser beer. For reversal, the principal argument is that the evidence is insufficient to sustain the convictions, more specifically, that there is a lack of corroborating testimony of the evidence given by Mary Shifflett, an accomplice.

Sam Rice, owner of Sam's Tavern, testified that he left his place of business about 12:30 (early morning) on November 11, and returned about 10:00 a.m.; that $50.00 in bills and $90.00 in change had been taken, together with approximately ten cases of beer, which he described as "An unusual brand of beer and that was the type of beer that was missing".[1] Rice said that a window was broken out on the south end of the building, and that the back door was open. He did not know the appellants and had never seen any of them at his place of business. Trooper Bernard Young of the State Police corroborated the fact that the window was broken and the door was open. Mary Shifflett, 13 years of age, who was not prosecuted, apparently because of her age, testified that she joined the defendants at Mansfield, Arkansas. She said that it had been prearranged for her to be picked up there and that she got into the front seat of the Chevrolet automobile between Jeffery Plowman,[2] driver of the car, and Johnny Cunningham; that this occurred about 11:50 p.m. Miss Shifflett stated that they drove around, bought gas and drove to Paris. She said that she did not see anybody on the street and that they drove near the tavern which she identified by a sign. On the street back of the

---

[1] No evidence was ever offered as to the brand name.

[2] Plowman, a non-resident of this state, has never been apprehended.

tavern, the car was stopped and Hutson got out. When asked if there was any discussion about breaking into the tavern before it happened, the witness stated that she heard conversation about breaking in, and that all appellants were present in the car at that time; however, she never did relate the conversation or identify those who took part in it. She said, "They were going to get some beer. I didn't know they were going to get any money". After Hutson left the car, Miss Shifflett stated that the rest all drove off, rode around for awhile, and then came back and picked up Hutson; that he had money and a case of beer. She said Hutson stated that he "got the door open and broke a window"; that she didn't know what he used except "they were going to use this thing called a tire tool". She said she got some of the change in nickels. According to the witness, the case of beer was placed in the back seat on the floor of the car, uncovered; they then drove around for awhile, came back, and let Moore and Larry Cunningham out at the tavern. The rest continued to ride around in the city until they were stopped by Officer Graham of the City Police around 3:30 a.m., who then took all occupants of the car to the police station. The length of time they were kept at the station varies with the testimony all the way from 30 minutes to a couple of hours. After they were released, Miss Shifflett said that these appellants drove back to the tavern but Moore and Larry Cunningham were not there, and never did get with them again; however, they saw five cases of beer "by the building behind the tavern", picked it up, and drove on back to Mansfield. Miss Shifflett testified that she placed her nickels in the truck of a friend, Diana Joyce.[3]

State Police Trooper Troy Oliver questioned Dorothy Lois Moore Little in the jail, after she had waived her rights under the case of *Miranda* v. *Arizona*, 384 U. S. 436. The trooper's evidence is not easy to follow since he stated that she made one statement, and then corrected it by making another, and it is difficult to definitely determine which facts were first given, and

[3]Diana Joyce testified that she found $.75 worth of nickels in the truck.

which facts were stated in correction. However, after a detailed study of the testimony, it appears that appellant (according to the officer) first stated that Moore and Larry Cunningham did not go to Paris with the other members of the group; subsequently, she said they were originally in the car but a man by the name of Tom Black[4] was taken to Huntington; they then returned through Mansfield where Moore and Larry Cunningham left the car, and the others drove on to Paris. Oliver testified that Mrs. Little said the other appellants and Mary Shifflett went on to Paris; that Little had a date with Hutson and Shifflett had a date with Plowman;[5] that after they arrived in Paris, Hutson got out of the car while they waited, and returned later with a case of beer and a large quantity of change. This was as far as Oliver detailed her statement, the officer then simply stating that with the difference that Mrs. Little said Moore and Larry Cunningham did not go to Paris, her statement was almost identical with that of Mary Shifflett. On trial, Mrs. Little testified that Moore and Larry Cunningham did go to Paris but got out of the car almost as soon as they arrived to answer a call of nature, and these two were not with the others in Paris the rest of the night; on the way home the group in the car picked up Moore and Larry Cunningham, who were hitch-hiking a ride back to Mansfield.

All the defendants, except Hutson and Larry Cunningham, denied having anything to do with the break-in at the tavern, and denied taking any beer or money. These two did not testify.

What are the applicable rules of law concerning a conviction based upon the testimony of an accomplice? In *Pitts* v. *State*, 247 Ark. 434, 446 S. W. 2d 222, we said:

"There is no dispute about the applicable rules of law. Under the statute a conviction for a felony cannot be had upon the testimony of an accomplice 'unless corroborated by other evidence tending to connect the defendant with the commission of the offense; and the cor-

---

[4]This name was not mentioned by any other party or witness.

[5]Mary Shifflett denied having a date with anybody.

roboration is not sufficient if it merely shows that the offense was committed, and the circumstances thereof' Ark. Stat. Ann. § 43-2116 (Repl. 1964). In construing the statute we have held that the test of the sufficiency of the corroboration is whether, 'if the testimony of the accomplice is eliminated from the case', the other evidence establishes the required connection of the accused with the commission of the offense. *Froman* v. *State*, 232 Ark. 697, 339 S. W. 2d 601 (1960). Corroborating evidence which merely raises a suspicion of guilt is not enough. *Underwood* v. *State*, 205 Ark. 864, 171 S. W. 2d 304 (1943)."

Right off, it is apparent that there is no corroborating evidence to sustain the convictions of Moore and Larry Cunningham. No officer, state or city, even saw these two men on the night in question, and the only testimony that implicates them is that of Mary Shifflett, who said they were let out at the tavern, and subsequently, the others, returning from the police station, saw five cases of beer in back of a building next to the tavern, the inference being that the cases were placed there by these two appellants. This testimony, even if given by a party who was not an accomplice, would not have been sufficient to convict, but certainly when given by an accomplice, and uncorroborated by other testimony "tieing in" these appellants, such evidence was insufficient.

The evidence against the other men is not much stronger for even in the case of Hutson, he was only implicated by Mary Shifflett, and Dorothy Lois Moore Little who, under the state's theory, was likewise guilty and was therefore an accomplice, and the testimony of two accomplices is not better than the testimony of one. What did the state actually prove? Disregarding the testimony of the accomplices, it was established that all appellants, except Larry Cunningham (Moore admitting his presence), were in the City of Paris on the night in question, and all except Larry Cunningham and Moore were in the vicinity of the tavern. It was established by the state that a burglary had been committed by some-

one and money and property taken that belonged to Sam Rice.[6] But no beer was ever seen by any officer, or other person, and this despite the fact that Officer Graham had stopped the car and ordered it to proceed to police headquarters; according to Mary Shifflett, a case of beer was on the floor against the back seat in plain view. Officer Graham said that he did not look into the car and none of the parties appeared to have been drinking. Though Mr. Rice testified that $50.00 in bills and $90.00 in change had also been taken, no one every found any money in the possession of appellants; in evidence, there is only the $.75 which Miss Shifflett stated she obtained from the burglary. In other words, when we eliminate the testimony of the accomplice (or accomplices) there is no independent evidence establishing the connection of the men with the commission of the offense. No more was established than a suspicion of guilt occasioned solely by the fact that these appellants were riding around in Paris in the wee hours of the morning and somebody committed a burglary. This is not a sufficient connection, for a suspicion of guilt is not enough.

The only conviction in which there is a question of whether the evidence was sufficient, is that of Mrs. Little. This is true because of the testimony of Trooper Oliver relative to the admissions of this appellant. But this evidence is far from satisfactory, for the officer, after quoting Mrs. Little's statement with reference to the trip to Paris, and Hutson getting out of the car and returning with beer and money, went no further with the details of her remarks, but only said that her statement was "almost identical" with that of Mary Shifflett. Of course, one discrepancy in the two statements is at once apparent for Mrs. Little mentioned a Tom Black who was taken to a service station in Huntington before the group went to Paris, and this fact was not mentioned

---

[6]There is an interesting fact which was not fully developed. Appellants were accused of stealing ten cases of Budweiser beer, a very well known brand, but Mr. Rice testified that the type of beer missing was "an unusual brand". Of course, it was not necessary in the Information to designate the brand name, but since it was done, and in view of Rice's testimony, the matter should have been developed further.

by Miss Shifflett. We are not satisfied to sustain a conviction simply on the basis of testimony that the balance of Mrs. Little's statement was the same as Miss Shifflett. For instance, did Mrs. Little obtain any money or beer? Mary Shifflett said that she (Shifflett) obtained $.75, but she also said that Little did no more than the witness —which was to sit in the car. Did Mrs. Little represent to Trooper Oliver that she heard persons in the car discuss the proposed burglary prior to its commission? These are important questions with reference to Mrs. Little's guilt and should have been more thoroughly explored.

There is also an additional matter that should be mentioned. Trooper Oliver testified that when he talked with Mrs. Little at the jail, he did not orally give the warnings required by *Miranda* but rather handed her a typed paper explaining her rights, and then waiving the right to an attorney. This instrument is here reproduced in full by a footnote.[7]

This warning, as far as an indigent prisoner is concerned, is defective for it contains the statement "We have

---

[7]"YOUR RIGHTS

Before we ask you any questions, you must understand your rights. You have the right to remain silent. Anything you say can be used against you in court. You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning. You have the right to the advice and presence of a lawyer even if you cannot afford to hire one. We have no way of giving you a lawyer, but one will be appointed for you, if you wish, if and when you go to court. If you wish to answer questions now without a lawyer present, you have the right to stop answering questions at any time. You also have the right to stop at any time until you talk with a lawyer.

WAIVER

I have read the statement of my rights shown above. I understand what my rights are. I am willing to answer questions and make a statement. I do not want a lawyer. I understand and know what I am doing. No promises or threats have been made to me and no pressure of any kind has been used against me.

SIGNED (s)   Dorothy Little   "

no way of giving you a lawyer, but one will be appointed for you, if you wish, if and when you go to court". This does not comply with *Miranda*. In that case, the court said:

"This does not mean, as some have suggested, that each police station must have a 'station house lawyer' present at all times to advise prisoners. It does mean, however, that if police propose to interrogate a person they must make known to him that he is entitled to a lawyer and that if he cannot afford one, a lawyer will be provided for him *prior to any interrogation* [Our emphasis]."

This language speaks for itself and it follows that the waiver does not meet the standard required if the person being interrogated is an indigent. The record reflects that Hutson had an attorney appointed for him, but there is no indication that the attorney representing the other appellants was appointed rather than retained by the individuals. At any rate, since this case is being reversed, that fact should be determined if there is another trial.

It is complained that the court erred in refusing to give an instruction requested by appellants relative to the offense of receiving stolen property. Appellants were not charged with that offense, could not have been convicted of it under the information filed against them, and there was thus no need for such an instruction. It is also asserted that error was committed when the prosecuting attorney, while making hs closing argument, referred to the defendants as "Thugs" and "Rough-necks". The trial court instructed the jury that they should give no consideration whatsoever to the term given by the prosecuting attorney in describing appellants, and he admonished the prosecuting attorney on the language used. There was no basis for a mistrial.

In accordance with what has been said, the judgment of conviction for all appellants is reversed and the cause remanded to the Logan County Circuit Court.

It is so ordered.