Gordon SUTTON *v.* STATE of Arkansas

CR 77-154                                            559 S.W. 2d 16

Opinion delivered November 28, 1977
(In Banc)
[Rehearing denied January 9, 1978.]

*Ray A. Goodwin,* for appellant.

*Bill Clinton,* Atty. Gen., by: *Joseph H. Purvis,* Asst. Atty. Gen., for appellee.

DARRELL HICKMAN, Justice. Gordon Sutton was charged in Greene County, Arkansas, with burglary of and breaking and entering two car washes. He was convicted of charges involving one of the car washes and found not guilty of charges as to the other. On appeal he alleges two errors: he says the lower court erred when it allowed a police officer to testify regarding an oral confession; and, he states that he was denied due process of law, and the right to effect counsel for about thirty days after his arrest.

We feel that Sutton should be granted a new trial.

Sutton is a 25 year old resident of St. Louis, Missouri, who has a ninth grade education and stated that he could not read or write very well. He had been a student in a special school. Undoubtedly he was an indigent. Sutton was arrested on September 18, 1976 in Paragould and placed in jail. He

appeared at his request before the Paragould Municipal Court on the 20th of September. The only record we have of this appearance is minutes signed by the municipal judge which state:

> The Defendant requested a preliminary hearing and the Court found enough evidence to bind over to the next term of Greene Court to answer the charge.

There is nothing in the record to indicate an inquiry was made of Sutton's need or desire for legal counsel. He remained in jail without counsel until October the 12th when counsel was appointed for him. On the 7th of October before counsel was appointed a postal inspector came to the jail to talk to Sutton about his possible involvement in violation of the postal laws. A lieutenant with the Paragould Police Department accompanied the postal inspector. Sutton was informed of his rights by the postal inspector and signed a form waiving all his rights; the inspector used a standard form used by all United States postal inspectors. It is headed in bold letters:

## UNITED STATES POSTAL INSPECTION SERVICE WARNING AND WAIVER OF RIGHTS

It is not disputed that when the postal inspector read to Sutton his rights regarding a lawyer the postal inspector told Sutton that he could not provide him a lawyer. As to whether anybody else, the police lieutenant or Sutton, said anything else the record is silent or inconclusive. According to Sutton, after he had talked to the postal inspector, he indicated to the police lieutenant that he could clear up some burglaries, including the burglaries with which he was charged. However, the police lieutenant, who was allowed to testify by the court, stated that actually Sutton confessed that he was guilty of the charges related to the car washes.

We feel the court should not have permitted the police lieutenant to testify. First of all, Sutton should have had an attorney appointed at his preliminary hearing, or the state should have shown that he specifically waived that right. Rule 8.2 of the Rules of Criminal Procedure provides:

(a) An accused's desire for, and ability to retain, counsel should be determined by a judicial officer before the first appearance, whenever practicable.

(b) Whenever an indigent accused is charged with a criminal offense and, upon being brought before any court, does not knowingly and intelligently waive the appointment of counsel to represent him, the court shall appoint counsel to represent him unless he is charged with a misdemeanor and the court has determined that under no circumstances will imprisonment be imposed as a part of the punishment if he is found guilty.

Rule 8.3 provides that upon the first appearance of the defendant before the judicial officer, and after the defendant has been advised of his rights:

No further steps in the proceedings other than pretrial release inquiry may be taken until the defendant and his counsel have had an adequate opportunity to confer, unless the defendant has intelligently waived his right to counsel or has refused the assistance of counsel.

The burden is clearly on the state to establish that Sutton waived his rights. All doubts must be resolved in favor of the individual rights and constitutional safeguards. *Smith v. State,* 240 Ark. 726, 410 S.W. 2d 749 (1966).

We cannot say in this case that the state met the burden of proving that it complied with the Rules of Criminal Procedure.

Second, apparently Sutton was improperly informed as to his rights. The warning he was given was for matters regarding the United States Postal Service. He was not warned of his rights about the burglaries. Furthermore, there was a disclaimer which would negate the warning that he had a right to a lawyer. He was specifically told one could not be provided for him by the postal inspector. The warning would not be in accordance with *Miranda v. Arizona,* 384 U.S. 436 (1966). In a similar case where there was a defective warning form we held that it did not comply with *Miranda. Moore v. State,* 251

Ark. 436, 472 S.W. 2d 940 (1971).

The question of voluntariness must be determined by looking to the whole situation and surroundings of the accused. *Watson* v. *State,* 255 Ark. 631, 501 S.W. 2d 609 (1973). Sutton had been charged and placed in jail. He had been taken before a judge but there is no evidence that he had been informed of his rights, including the right to have counsel appointed. He was a man with a limited education; he was questioned while in jail after receiving a defective warning. Considering these circumstances in total, we find that any statement Sutton may have made in the presence of the police officer could not be considered voluntary and it is, therefore, inadmissible.

Reversed and remanded.

HARRIS, C.J., GEORGE ROSE SMITH and FOGLEMAN, JJ., dissent.

JOHN A. FOGLEMAN, Justice, dissenting. I must disagree with the majority in this case. From reading the opinion, I am uncertain whether the failure to appoint counsel at appellant's "first appearance" is an independent basis for reversal. If it is, I most assuredly disagree. In spite of the fact that the record indicates that there was a preliminary hearing, rather than a "probable cause" or pretrial release hearing, this case is different from *Graves* v. *State,* 256 Ark. 117, 505 S.W. 2d 748. In this case, it seems clear to me that appellant suffered no prejudice because of the holding of the preliminary hearing without appointing counsel. The appointment of counsel for a pretrial release hearing is not required. See *Gerstein* v. *Pugh,* 420 U.S. 103, 95 S. Ct. 854, 43 L. Ed. 2d 54 (1974). No evidence of any statement by appellant at the preliminary hearing was introduced in evidence. If appellant's prejudice is related to the statement made to Officer Spurlock, then it is difficult to see how prejudice resulted, because appellant's testimony at the trial is substantially the same as the statement about which the officer testified.

The question about failure to appoint counsel was raised

only by a motion for a directed verdict. It is unclear to me how a directed verdict could possibly have been granted on that ground. I find no error on that point.

Perhaps the majority considers this failure to appoint counsel as one of the circumstances making up the totality to be considered by the trial court in determining the voluntariness of the incriminating statement made to Officer Spurlock. I do not see how the trial judge's finding that the spontaneous desire of appellant to clear up the "car wash" matter can be held to be clearly against the preponderance of the evidence.

Spurlock did not conduct the investigations regarding the burglaries and thefts with which appellant was charged. He had talked with appellant prior to the October 7th occasion. He had "read his rights" to Sutton. He went to the jail with Postal Inspector Leachmen as an accommodation to that officer. Sutton was brought from the jail to the sheriff's office. Leachman advised Sutton as to his rights, and read them to Sutton very slowly. Sutton indicated that he understood. Sutton was specifically told that he had the right to remain silent. He asked no questions and seemed to Spurlock to be communicating all right. He was told that what he said could be used in court against him. He was admonished that he had a right to talk to a lawyer for advice before answering any question and to have the lawyer with him during questioning. He was told that a lawyer would be appointed for him before any questions, if he could not afford one. Leachman told Sutton that he could not furnish Sutton a lawyer. Sutton was told that if he decided to answer questions without a lawyer, he would have the right to stop questioning at any time and to stop answering until he did talk to a lawyer. He signed a statement that he did understand what his rights were, in which he expressed his willingness to discuss the subjects presented, and stated "I do not want a lawyer at this time." At the request of Leachman, Spurlock read this whole statement, including the statements of rights, to Sutton, very slowly. It had been explained to Sutton that the things Leachman wanted to talk to him about related to occurrences in St. Louis, Missouri. After Sutton signed this waiver, Leachman asked if he had any questions. He asked

none. Sutton did not say at any time during this interview that he wanted a lawyer.

At the outset of the interrogation by Leachman about the matters alleged to have occurred in St. Louis, and without any mention by anyone of any crime in Greene County, Sutton told Spurlock that he could clear up the burglaries for Spurlock. Spurlock had not participated in any interrogation up to that point or mentioned the car wash burglaries. Leachman had related the information he had gathered about postal matters to Sutton, when Sutton said that he wanted to get the "whole thing" straight, including the burglaries. Spurlock testified that he may have asked some questions when Sutton made his statement about things that Sutton might have omitted or asked whether there was something else Sutton wanted to tell him about. Sutton did tell Spurlock of a third burglary.

Spurlock was then aware that Darrell Simpson, an alleged accomplice, had confessed and was aware of the content of that confession. Sutton never indicated to Spurlock at any time that he wanted to talk to a lawyer.

Sutton testified that he was going to give Leachman a voluntary statement on what happened in Missouri, so he went on and told Spurlock that he would like to make a "copout" to him, and Spurlock said that he would come back and talk to him later, but started asking him some questions about a stolen car and "some stuff" Sutton was supposed to be in. Sutton first said he told Spurlock that he knew about nothing except the burglaries in St. Louis. He then denied confessing his guilt to Spurlock, but said that he was thinking about pleading guilty. He admitted that he did not ask either Spurlock or Leachman any questions about a lawyer. On cross-examination, Sutton admitted that, after the postal inspector went over the matter with him, he turned to Spurlock and said, "I can straighten out the car wash burglaries," but denied that he ever made any explanation of them to Spurlock. He also admitted that his rights had been explained to him "as described." He stated that the officers told him that they could not furnish him a lawyer.

This is not the sort of police conduct which was intended to be inhibited by *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1970), and its progeny. See *Ouletta* v. *Sarver,* 307 F. S. 1099 (E. D. Ark.) aff'd, 428 F. 2d 804 (8th Cir. 1970). Police officers are not required to gag an accused who wants to confess or make incriminating statements. Statements which do not result from in-custody interrogation are not barred. *Johnson* v. *State,* 252 Ark. 1113, 482 S.W. 2d 600. Spontaneous, voluntary and unsolicited statements made when accused, although in custody, is not being interrogated are clearly admissible. *Steel* v. *State,* 246 Ark. 75, 436 S.W. 2d 800; *Crawford* v. *State,* 254 Ark. 253, 492 S.W. 2d 900; *Reynolds* v. *State,* 254 Ark. 1007, 497 S.W. 2d 275; *Upton* v. *State,* 257 Ark. 424, 516 S.W. 2d 904; *Sanders* v. *State,* 259 Ark. 329, 532 S.W. 2d 752; *Little* v. *State,* 261 Ark. 859, 554 S.W. 2d 312.

The fact that Leachman told Sutton that he could not give him a lawyer is insignificant. In *Steel* v. *State,* supra, we sustained a finding that statements of the accused in custody were voluntary, when the waiver of rights contained this statement: "We have no way of giving you a lawyer, but one will be appointed for you, if and when you go to court." This waiver was upheld because, as here, the accused were advised of their right to remain silent, that anything they said might be used against them in court, that they had the right to talk to a lawyer before being asked any questions and to have that lawyer with them during any questioning. We said: "They could not have been more clearly told that they had the right to refuse to make any statements whatsoever." See also, *Barton* v. *State,* 256 Ark. 486, 508 S.W. 2d 554, distinguishing *Moore* v. *State,* 251 Ark. 436, 472 S.W. 2d 940, as it should be distinguished here. The fact that appellant signed the waiver, admittedly without any coercion, carries great weight. See *Holmes* v. *State,* 257 Ark. 871, 520 S.W. 2d 715. So do Sutton's admissions about the explanation of his rights. See *Charleston* v. *State,* 257 Ark. 26, 514 S.W. 2d 209. The fact that warnings were given by an officer other than the one to whom the statement was made is not of any real significance. See *Kennedy* v. *State,* 255 Ark. 163, 499 S.W. 2d 842.

Surely the court does not intend to say that, because Sut-

ton asked the jail cook about getting a lawyer, he could not thereafter waive his right to counsel or make a wholly voluntary or spontaneous confession. If so, I protest. There is no sound reason for so holding.

I simply am unable to see how the court can overturn the trial judge's finding that Sutton's statements were voluntary. I would affirm the judgment.

I am authorized to state that the Chief Justice and Mr. Justice GEORGE ROSE SMITH join in this opinion.