STATE of Arkansas *v.* Judon William GRAHAM

CR 82-57                                   642 S.W.2d 880

Supreme Court of Arkansas
Opinion delivered November 29, 1982
[Rehearing denied January 10, 1983.*]

*Steve Clark,* Atty. Gen., by: *Leslie M. Powell,* Asst. Atty. Gen., for appellant.

*Lightle, Beebe, Raney & Bell,* by: *A. Watson Bell,* for appellee.

PHILIP E. DIXON, Special Justice. This is an appeal from an interlocutory order. It presents the single issue of the voluntariness of an in-custodial confession.

---

*ADKISSON, J., would grant rehearing.

In sustaining Appellee's motion to suppress the confession, the Trial Judge made, *inter alia*, the following ruling:

> "In view of the defendant's limited education, his illiteracy, his views toward uniformed authority, his psychological makeup, the custodial interrogation, and the totality of the circumstances, the Court is of the opinion that the statement obtained from the defendant was not a voluntary statement as defined by existing law."

Appellee, Judon Graham, was contacted by Detective Sergeant Robert Dunaway of the White County Sheriff's Office and State Police Investigator, Mary Kesterson, at his place of employment at the Pangburn School System. They requested that he accompany them to Searcy, Arkansas, to talk with them. Appellee agreed and drove his own vehicle to the White County Detention Center.

At the Detention Center, Appellee acknowledged that he was advised by the officers as to his constitutional rights as an accused, had questions asked him, and testified that he signed and understood the Rights Waiver.

After having signed the Rights Waiver, Graham was informed of the allegations that had been made against him by a student at the Pangburn School System.

The recent decision of this court in *Davis* v. *State*, 275 Ark. 264, 630 S.W.2d 1 (1982), clearly dictates that in ruling upon the suppression of a confession, each case must be determined by looking at the totality of the circumstances. This totality is subdivided into two main components; first, the statement of the officer, and second, the vulnerability of the defendant.

The *Davis* decision, *supra,* also sets forth the procedural rules that are applicable. The State bears the burden of proving by a preponderance of the evidence the voluntariness of an in-custodial confession, Ark. Stat. Ann. § 43-2105 (Repl. 1977). Any conflict in the testimony of different witnesses is for the trial court to resolve. *Harvey* v. *State*, 272

Ark. 19, 611 S.W.2d 762 (1981); *Wright* v. *State*, 267 Ark. 264, 590 S.W.2d 15 (1970). While this court does not reverse the Trial Court's finding unless it is clearly erroneous, it does make an independent determination based on the totality of circumstances, with all doubts resolved in favor of individual rights and safeguards, to determine whether the holding of the trial court was erroneous. *Davis, supra.*

It is first necessary to examine the statements of the officer. At the hearing before the trial court, Officer Dunaway testified that he initially attempted to establish a rapport with Graham. He advised Graham that he would have no objection to handling the case in the Judge's chamber, because Graham was concerned about an appearance in the Court room in the presence of people and representatives from the press. The officer also told Graham that he would try to see that this matter would be handled that way and, as far as he was concerned, there was no reason why it could not be done in this case. Officer Dunaway further told Graham that he would do all he could to see that the matter would be handled quietly and would try to keep the case from being sensationalized. The questioning officer also told Graham that his lack of a previous criminal record would be in his favor and that he would go to court as a first offender. In addition, Graham and Dunaway had a conversation about medical help that would be available to Graham and that he was told that it could perhaps be provided on an out-patient basis.

Secondly to be considered in the totality of the circumstances is the vulnerability of the accused. The testimony before the trial court in this regard was significant. Appellee testified that he was very concerned about what his family would think of his arrest and did not want any publicity and wanted the matter over with in a few weeks. He believed the statement of the Officer that he could be treated as an out-patient, and that he believed that Officer Dunaway knew what he was talking about. He further stated that he had never been in trouble with the law and had never had a police officer tell him something that wasn't true. Of importance was the testimony of Graham that he believed that if he signed the statement, he would not have to go to the

penitentiary and would just get mental help as an out-patient. He testified that he honestly believed it was going to be that way and that Officer Dunaway knew what he was talking about because he was the Sheriff, represented the law, Graham believed him, and that is the reason he signed the confession.

Testimony was also presented on behalf of Appellee by a clinical psychologist who stated that Graham could not read or write sufficiently to take any paper and pencil tests and that all questions had to be read to him. Additionally, Graham's achievement level was somewhere at the second or third grade level and he was illiterate. The psychologist testified that Appellee was a very trusting person to anyone in a position of authority, and that in his opinion, Graham was willing to attest to something with which he did not basically agree because of the promise of an "easy way out" from pressure and from the publicity that he so greatly feared for himself and his family.

We do note, and affirm the trial court's ruling, that Sergeant Dunaway did not intend to induce, mislead, misrepresent, or otherwise persuade or intimidate Appellee in order to obtain a statement. However, the critical issue to be resolved is how the conversations between the Officer and Appellee were perceived by Graham; here, the trial court found that because of Appellant's limited education, illiteracy, respect for uniformed authority, psychological makeup and the totality of the circumstances, his statement was not voluntary, as defined by law.

It was for the trial court, as the fact finder, to weigh the evidence and resolve the credibility of the witnesses. *Wright v. State, supra.* We hold that the trial court's ruling that the confession was not voluntarily and knowingly given was not clearly against the preponderance of the evidence.

ADKISSON, C.J., dissents.

HICKMAN, J., not participating.

RICHARD B. ADKISSON, Chief Justice, dissenting. The issue in this case is the voluntariness of appellee's confes-

sion. Voluntariness is determined by looking at (1) the police conduct involved, and (2) the characteristics of the accused. Here, the trial judge found no police misconduct:

> The Court is of the opinion that Sgt. Dunaway, the officer who discussed these matters with the defendant, did not intend to induce, mislead, misrepresent, or otherwise persuade or intimidate the defendant in order to obtain a statement. Sgt. Dunaway's experience with the judicial process . . . justified his comments to the defendant about these matters. It is also shown from the evidence that no promise or guarantees were made to the defendant.

The trial court found the officer made no promise to the defendant, that the officer had no intent to mislead the defendant, and all the comments of the officer were justified. Absent police misconduct the characteristics of the accused are irrelevant.

Involuntary confession cases originated with *Brown v. Mississippi,* 297 U.S. 278 (1936), where a deputy sheriff participated in the hanging of the defendant by a rope to a limb of a tree and participated in the whipping of the defendant. Based on these facts, his confession was held to be involuntary. This case and its progenies have primarily involved extreme police misconduct coupled with particularly vulnerable persons such as children. *See Haley* v. *Ohio,* 332 U.S. 596 (1948). These cases were never intended to apply to a situation where, as here, there was no police misconduct.

In any event, the appellee was not vulnerable within the meaning of these cases. The undisputed facts are that, except for illiteracy, the appellant was found to be without psychosis or neurosis and his personality structure was within normal limits. In other words, he was, generally, a normal 51-year-old man with a full time job and a family who confessed in hope of avoiding any public embarrassment arising from his rape of a little girl.

For these reasons I would reverse and admit the confession in evidence.