Patrick Wayne FLEMING *v.* STATE of Arkansas

CR  84-105                    681 S.W.2d 390

Supreme Court of Arkansas
Opinion delivered December 21, 1984

*John M. Byrum,* for appellant.

*Steve Clark,* Att'y Gen., by: *Marci L. Talbot,* Asst. Att'y Gen., for appellee.

JOHN I. PURTLE, Justice. Appellant was convicted of first degree murder and sentenced to life in prison. On appeal, he argues that the court erred: 1) in excusing a prospective juror for cause; 2) in admitting appellant's two custodial statements in the absence of an effective waiver of his right to remain silent; and 3) in admitting the statements in the absence of proof that they were voluntarily made. We think the trial court was correct in all three instances and affirm.

The prospective juror, a Ms. Black, was challenged by

the state for bias. *Voir dire* examination revealed that Ms. Black had been a defense witness in a recent criminal case in the same court and had been cross examined by the same prosecutor who tried the case at bar. Ms. Black had lived with the defendant in that case before his imprisonment, and she still considered herself his girlfriend. She felt that her boyfriend had been treated unfairly. She had visited her boyfriend in jail, and on two occasions, had spoken with the appellant there. Ms. Black's sister regularly called the appellant and visited him in jail. There was no response to the court's question to the entire panel of whether anyone was acquainted with the appellant, but it is fairly clear from the record that Ms. Black was not then in the courtroom.

Ms. Black did say that she could disregard her feeling that her boyfriend had been treated unfairly. She said that her sister's relationship with the appellant would cause her no problem or embarrassment at home in the event appellant was convicted. She said that she was not prejudiced against the state and that she could render an unbiased verdict and consider the full range of punishments.

Ms. Black did not have "implied bias" as our statute defines the term. Ark. Stat. Ann. § 43-1920 (Repl. 1977). In cases of actual bias, the ruling is discretionary with the trial court. Ark. Stat. Ann. § 43-1919; *Allen* v. *State,* 281 Ark. 1, 660 S.W.2d 922 (1983). We will not reverse a ruling on juror qualifications absent an abuse of discretion. *Henslee* v. *State,* 251 Ark. 125, 471 S.W.2d 352 (1971).

Arkansas Stat. Ann. § 43-1919 defines actual bias as "the existence of such a state of mind on the part of the juror, in regard to the case or to either party, as satisfies the court, in the exercise of a sound discretion, that he can not try the case impartially, and without prejudice to the substantial rights of the party challenging." Jurors are presumed unbiased and the burden of proving actual bias is on the party challenging the juror. *Linell* v. *State,* 283 Ark. 162, 671 S.W.2d 741 (1984).

In *Linell,* and in *Allen,* supra, we stressed the trial court's superior opportunity to observe the prospective juror

and assess his demeanor. We recognize that the trial court's discretion is not unlimited. We also recognize that these facts do not present as clear a case of actual bias as some we have considered before. See, e.g., *Grigsby* v. *State,* 260 Ark. 499, 542 S.W.2d 275 (1976). We are not prepared to hold, however, that a prospective juror must admit his bias before the trial court may excuse him. In *Conley* v. *State,* 270 Ark. 886, 607 S.W.2d 328 (1980), we held that a juror's candid answers indicating bias could not be overcome by routine statements to the effect that he would be fair. We see no abuse of discretion in the trial court's decision to excuse the juror. We do not mean to imply that the state has the right to a jury of its own choosing because it does not.

The appellant made two custodial statements, each preceded by his execution of a "rights form." The forms are used by the police to ascertain that an accused understands his rights under the law. They enumerate an accused's rights to remain silent and to have the aid of an attorney. The last question on the forms at issue reads: "Do you understand that you may waive the right to advice of counsel and your right to remain silent, and you may answer questions or make a statement without consulting a lawyer if you so desire?" Appellant answered this question in the affirmative before making each statement.

Appellant argues that since the forms contain no express waiver of his rights, none can be inferred from the forms. We agree with that proposition, but hold that there was sufficient independent evidence which, when considered with the forms, supports the trial court's finding of a valid waiver.

We strongly feel that a form used to support the state's contention that an accused knew and waived his rights should contain express language to that effect. See *Conti* v. *State,* 10 Ark. App. 352, 664 S.W.2d 502 (1984). On the other hand, it is clear that such a form is not a prerequisite to a finding that the statement is voluntary. *North Carolina* v. *Butler,* 441 U.S. 369 (1979); *Cagle* v. *State,* 267 Ark. 1145, 594 S.W.2d 573 (Ark. App. 1980). The issue on appeal is whether the trial court properly found, based on

the totality of the circumstances, that the statements were voluntary. In this context, the statements were voluntary if the accused made a knowing and intelligent waiver of his right to remain silent. *Cagle,* supra.

Appellant was familiar with the criminal justice system. He had previously been arrested between 10 and 25 times and he repeatedly stated that he fully understood his rights. The last question on the forms, quoted above, carries a clear implication that one who proceeds to make a statement will have waived his rights. The statements in question were made immediately following execution of the forms and additional questioning by the police to ensure that appellant understood his rights. Appellant's answers to those questions indicated that he knew the difference between understanding his rights and waiving them. The totality of the circumstances clearly supports the trial court's ruling. The trial court did not err in admitting the statements into evidence. We agree with the trial court that the written form would be stronger evidence if an express waiver was included.

The appellant's final argument is that the statements should not have been admitted into evidence because he was coerced and threatened into making them.

Custodial statements are presumed to be involuntary. The state has the burden to prove otherwise. This court makes an independent review of the totality of circumstances on the issue, and will reverse only if the trial court's finding is clearly against the preponderance of the evidence. *Williams* v. *State,* 281 Ark. 91, 663 S.W.2d 700 (supplemental opinion, 1984); *Fuller* v. *State,* 278 Ark. 450, 646 S.W.2d 700 (1983); *Freeman* v. *State,* 258 Ark. 617, 527 S.W.2d 909 (1975).

The testimony is in conflict on the issue of voluntariness. Appellant testified that he was struck on the head and threatened. Appellant's mother testified that appellant had knots on his head and that appellant told her that he had been beaten. Appellant also testified that he was told that he was not waiving his rights by signing the forms.

Three police officers, on the other hand, testified

generally that the appellant was not threatened, beaten, enticed or coerced into making the statements. One officer testified that appellant and all officers who had come in contact with him had been treated for lice and that the medicine stuck to the hair and was difficult to wash out. A psychiatrist testified that appellant was of low average intelligence. Appellant had been arrested and read his rights many times before.

The conflicting testimony presented issues of credibility to be resolved by the trial court. *State* v. *Graham,* 277 Ark. 465, 642 S.W.2d 880 (1982).

The "totality of the circumstances" approach consists basically of two components: the statements of the officer and the vulnerability of the accused. *Graham,* supra. In this case, the statements of the officers were nothing unusual or illegal, at least according to their testimony. There were no promises, threats or coercive tactics. This accused was perhaps more vulnerable than some in one way, and less so in another. Appellant was of low average intelligence, suggesting some vulnerability, but he had been arrested many times, suggesting some sophistication in these matters. The trial court's decision was not clearly against the preponderance of the evidence on this issue.

Affirmed.

HICKMAN, J. concurs.

HUBBELL, C.J., HAYS and HOLLINGSWORTH, JJ., dissent. dissent.

STEELE HAYS, Justice, dissenting. The law imposes on this court the responsibility of making an independent review of the circumstances surrounding confessions made by suspects while held in custody, the presumption being that incriminating statements are involuntary. The totality of the circumstances in this case leads me to the conclusion the state has failed to overcome the presumption against this confession.

Charges of physical abuse are commonly raised and, necessarily, we depend on the trial judge to determine whose version is credible, but in the end the burden rests here. The appellant insists he was physically abused by the officers and his mother gives rather graphic support to those claims. The opposing testimony by two officers is plainly equivocal: *"I don't recall* [appellant] being intimidated or pressured by anyone" (T. 141), *"I don't recall* seeing anyone strike or threaten [appellant]"* (T. 146), and, *"So far as I know* there were no promises or threats made to [appellant] before or during the taking of either statement" (T. 152) (The emphasis is supplied). Under these circumstances the state's proof is less than convincing against evidence to the contrary, not implausible on its face. Consequently I would suppress the confession.

HUBBELL, C.J., joins this dissent.

P.A. HOLLINGSWORTH, Justice, dissenting. I dissent from the majority's holding that the appellant knowlingly waived his fifth and sixth amendment rights. An individual's right to remain silent and to have the opportunity to confer with counsel is well established in Arkansas law. *Tucker* v. *State,* 261 Ark. 505, 549 S.W.2d 285 (1977). Before any statement made by a defendant can be admitted into evidence, it must be shown that the defendant knowingly, voluntarily, and intelligently waived his rights to remain silent and to counsel. *Miranda* v. *Arizona,* 384 U.S. 436 (1966); *Hickerson* v. *State,* 282 Ark. 217, 667 S.W.2d 654 (1984); *Hunes* v. *State,* 274 Ark. 268, 623 S.W.2d 835 (1981). I do not believe the appellant knowingly waived his constitutional rights in this case.

The appellant was read his rights at the time of his arrest. He was handed a standard rights form which he read and to which he wrote a response. The last question on the form was "Do you understand you may waive the right to advice of counsel and your right to remain silent? You may answer questions or make a statement without consulting a lawyer if you so desire." Appellant answered "Yes" to this question. This form does not clearly show that appellant waived his rights. It only asked if he understood his rights.

We have held a rights form to be defective due to the fact that it implied that an attorney could not be appointed before the accused's case came up in court. *Moore* v. *State,* 251 Ark. 436, 472 S.W.2d 940 (1971). In this case the standard rights form should also be held defective since the appellant may not have realized that he was waiving his rights when he answered yes to the last question on the form. The form does not contain a specific waiver of rights statement. The trial judge noted this in his ruling when he said:

> There is nothing showing a positive waiver by the defendant. A waiver is a giving up of a right. And there is nothing showing he did that other than the fact that he answered after he was advised of his rights. I can see instances when a person might not realize he's waiving anything when he answers those questions. But if he were asked to sign a statement stating he did, in fact, understand these rights and that he wished to waive them and a waiver was explained to him, I think it would lend a little more effect to it . . .

I agree with the trial court's statement that the rights form does not show a positive waiver by the appellant. As such, the appellant could not have knowingly waived his rights. Thus, the requirements of *Miranda* were not met. I would suppress the appellant's statements.