Johnny BOVEE *v.* STATE of Arkansas

CA CR 86-100                                             720 S.W.2d 322

Court of Appeals of Arkansas
Division II
Opinion delivered November 26, 1986

270

*Richard A. Garrett*, for appellant.

*Steve Clark*, Att'y Gen., by: *Mary Beth Sudduth*, Asst. Att'y Gen., for appellee.

DONALD L. CORBIN, Judge. This appeal comes to us from the Saline County Circuit Court. A jury trial was held wherein appellant, Johnny Bovee, was found guilty of second degree murder and was sentenced to 15 years in the Arkansas Department of Correction. Appellant appeals the conviction and the sentence. We reverse and remand.

Appellant raises the following four points for reversal: (1) The trial court erred by not striking a particular juror for cause and by not allowing sequestering of the jurors for questioning by the defense counsel; (2) the court denied the right of appellant to cross-examine witnesses by denying recross examination; (3) the court erred in its failure to grant a directed verdict on the charges of murder in the first degree and murder in the second degree; and (4) the court erred in not declaring a mistrial when the jury returned without a specific sentence or, in the alternative, the court should have sentenced appellant to the minimum sentence.

We find this case should be reversed on the first point raised by appellant. However, the Arkansas Supreme Court's decision in *Harris* v. *State*, 284 Ark. 247, 681 S.W.2d 334 (1984), requires that, where the sufficiency of the evidence is challenged on appeal of a criminal conviction, we must review the sufficiency of the evidence, including the inadmissible evidence, prior to

consideration of trial errors.

A motion for directed verdict is a challenge to the sufficiency of the evidence. *Glick* v. *State*, 275 Ark. 34, 627 S.W.2d 14 (1982). In reviewing the sufficiency of the evidence on appeal, this court will affirm if there is substantial evidence to support the verdict. *Pickens* v. *State*, 6 Ark. App. 58, 638 S.W.2d 682 (1982). Substantial evidence is evidence of sufficient force and character that it will, with reasonable and material certainty and precision, compel a conclusion one way or the other; it must force the mind to pass beyond conjecture. *Jones* v. *State*, 269 Ark. 119, 598 S.W.2d 748 (1980).

Appellant was charged by information with the crime of first degree murder. The State alleged that appellant, with premeditation and deliberation, caused the death of Rena F. Wearsch. Appellant was tried by a jury which found him guilty of second degree murder. On appeal, appellant argues that the court's denial of his motions for directed verdict to the charges of first and second degree murder constitutes reversible error.

Testimony adduced by the State at trial established that Rena Wearsch died as the result of a gunshot wound to her head. Charlotte Arp, who was present in the victim's home when the victim was shot, testified that she and the victim had been drinking most of the day on October 31, 1985. She said she passed out and was awakened either by the sound of a gunshot or by appellant. She testified that she saw appellant walk out of the victim's bedroom and heard appellant say that he had shot Rena. Arp entered the bedroom and attempted to help the victim who was still alive at the time. After officers from the Saline County Sheriff's Department arrived, appellant left the scene, even though he had been advised to stay there. A police officer testified that appellant was found crouched behind a bush in the woods. Appellant was transported to the Sheriff's Office. He gave a statement to the officers the next morning.

Appellant's statement, which was admitted at trial through the testimony of Officer Rick Elmendorf, stated that on the day Rena was killed they had been drinking and Rena got mad and went into the bedroom and got a gun. When he grabbed the gun Rena pulled back, the gun went off and she fell down. Appellant told police the gun "just fired because it had a hair trigger" and

that Rena was holding the gun like one would normally hold a gun. The medical examiner testified that the results of a trace metal test indicated that the victim probably was not holding the gun when it was fired and that there was no evidence of a struggle over the gun. A firearms examiner testified that the gun did not have a hair trigger. Testimony adduced at trial indicated that appellant had tried to run over Rena Wearsch with a truck before and that he had threatened to hit her in the head with a bottle.

■ Viewing all the above evidence in the light most favorable to the jury's verdict we find that there was substantial evidence to support a conviction for second degree murder under Ark. Stat. Ann. § 41-1503 (Repl. 1977).

On January 24, 1986, this case came to trial. Following call of the roll, swearing of the veniremen to *voir dire*, and opening remarks *voir dire* was conducted. Mrs. Catherine DeWeerd was questioned by appellant's attorney and the following exchange occurred:

> Q Can you promise me that you will attach no guilt whatsoever to Johnny Bovee just because he's sitting here today?
>
> A I could try.
>
> Q Well, I understand you can try but I want you to promise me that you won't do it. Can you do that?
>
> A Oh, I think I could.
>
> . . . .
>
> Q . . . Now, just because Johnny Bovee is charged with murder and because of the seriousness of the crime, would you attach any significance to it? Would you be more apt to find him guilty just because of what he's charged with?
>
> A Probably.
>
> Q Pardon?
>
> A I said probably.
>
> . . . .
>
> Q Well, do you understand that Mr. Bovee does not have to

present any case at all?

A No.

Q He does not have to prove anything.

A The State has to prove it.

Q The State is the one that has to do all the proving. Would it bother you if Mr. Bovee didn't take the stand?

A It might, if he's not willing to take the stand for his own self defense.

Q Do you feel like if he did not take the stand that you would be more apt to return a verdict of guilty than you would one of not guilty?

A I think so.

Q Even if the judge instructed you that you were to lend no weight to the fact that he had not taken the stand, that you would still be more apt to find him guilty?

A I would still [sic] more apt to feel like he was afraid of being cross examined.

. . . .

Q . . . Do you have anything morally against drinking?

A Morally against drinking?

Q Yes, Ma'am.

A I don't agree with it. I don't do it and I don't think it's necessary to do it.

Q Because of that, if it comes out in testimony during this trial that a lot of the people involved were intoxicated or in varying degrees of intoxication, would that cause you to have any prejudice against any of them?

A It may.

Q Would you feel like that intoxication could ever be a defense to a crime?

A What do you mean by that?

Q If the judge instructs you that, now I do not know whether he will or not, but let's say that if he did instruct you that the defendant was entitled to an instruction on intoxication which would say that if he was intoxicated enough to not form the intent necessary to commit the crime, that if you determine that he had reached that state of intoxication, that you had to return a verdict of not guilty to that crime charged, would you be able to do so?

A Saying he was intoxicated?

Q Yes, Ma'am.

A But he was not guilty?

Q Yes, Ma'am.

A Would I be able to do so?

Q Yes, Ma'am.

A I'm not real sure whether I could or not.

Q Okay.

A Because of some experiences I've had with it.

. . . .

Q We all try not to be prejudiced but we can't help it. It's something that is born into us and bred into us from the time that we're little bitty until the time we grow up. You can be prejudiced against different things. Do you feel that at this point in time you have any prejudice against Johnny Bovee either because of crime charged or because of the fact that alcohol may be involved?

A Do I have any prejudice?

Q Yes, Ma'am.

A Probably my main prejudice would be alcohol involved.

. . . .

Q Can you promise me that if you are convinced that Johnny Bovee is not guilty and there are eleven people back in the jury room that are convinced that he is guilty that you will stand your ground and say that "I don't believe

he's guilty, and you're not going to make me change my mind," just by the pressure? Can you take that kind of pressure?

A I don't know. Sometimes I break down pretty easy.

At this point the defense moved that Mrs. DeWeerd be struck for cause. The trial judge denied the motion, stating that Mrs. DeWeerd was qualified. The defense then used a peremptory challenge and excused Mrs. DeWeerd.

Appellant used all his peremptory challenges before jury selection was completed. After expending all his peremptory challenges, appellant's counsel questioned prospective juror Thomas Beard. When asked whether he believed that the defendant should take the stand, Mr. Beard replied that he did feel that the defendant should take the stand, and that he would feel that way even if the court instructed him that it should make no difference whether the defendant took the stand. Defense counsel then moved to have Mr. Beard struck for cause. The trial court allowed additional *voir dire* questioning by the State, qualified Beard as a juror, and denied appellant's motion.

In *Fleming* v. *State*, 284 Ark. 307, 681 S.W.2d 390 (1984), the Arkansas Supreme Court stated the standard of review for a ruling on juror qualifications as follows:

> We will not reverse a ruling on juror qualifications absent an abuse of discretion. *Henslee* v. *State*, 251 Ark. 125, 471 S.W.2d 352 (1971).
>
> Arkansas Stat. Ann. § 43-1919 defines actual bias as "the existence of such a state of mind on the part of the juror, in regard to the case or to either party, as satisfies the court, in the exercise of a sound discretion, that he can not try the case impartially, and without prejudice to the substantial rights of the party challenging." Jurors are presumed unbiased and the burden of proving actual bias is on the party challenging the juror. *Linell* v. *State*, 283 Ark. 162, 671 S.W.2d 741 (1984).

*Id.* at 309, 681 S.W.2d at 392. This court faced a similar problem in *Miller* v. *State*, 8 Ark. App. 165, 649 S.W.2d 407 (1983), and announced the following rule:

> [A]ppellant is in a position to challenge any error of the trial court in refusing to strike a juror for cause if the record shows that juror he objected to was forced upon him because he had exhausted his peremptory challenges. For that rule to be applicable, however, the appellant must not only show that the trial judge abused his discretion in not excusing the first juror for cause, but must also demonstrate from the record that he would have excused the latter one had he been able to peremptorily challenge him.

*Id.* at 166, 649 S.W.2d at 407-408 (citation omitted).

In the case at bar we find that it was an abuse of discretion to qualify Mrs. DeWeerd as a juror. She indicated a number of times during the questioning that she was biased. Appellant used all his peremptory challenges and has demonstrated that he would have excused Mr. Beard if he'd had another peremptory challenge, thereby properly preserving his record to raise the issue here. Therefore, we find that the decision of the trial court must be reversed.

Reversed and remanded.

CRACRAFT, C.J., and GLAZE, J., agree.