Titone, J.
(dissenting). In Miranda v Arizona (384 US 436), the Supreme Court held that a suspect in custody cannot be interrogated until he has been sufficiently informed of his rights and has decided to waive them. While it is well established that the required waiver need not be explicit and may be inferred from the suspect’s conduct (North Carolina v Butler, 441 US 369, 373; see, People v Davis, 55 NY2d 731), the Supreme Court has never abrogated the basic principle that the inference may not be made "simply from the silence of the accused after the warnings are given or simply from the fact that a confession was in fact eventually obtained.” (Miranda v Arizona, 384 US 436, 475, supra.) In this case, unlike most *969 others in which courts have found waivers from the suspect’s conduct, there was, in truth, nothing more than the accused’s silence and the bare fact that a confession was obtained. Accordingly, I dissent from the majority’s decision to uphold the denial of defendant’s suppression motion.
A brief comparison of the salient facts in this case with the facts in other cases in which waivers have been found demonstrates the degree to which the majority has violated the Miranda prescription. In North Carolina v Butler (supra), the Court held that a finding of waiver was not precluded where the defendant, after affirmatively stating that he understood his rights, told the police he was willing to speak but would not sign a written waiver form (see also, United States v Ogden, 572 F2d 501). Two other significant Federal decisions found valid waivers where the suspect had affirmatively stated he understood his rights and then made his inculpatory statement (United States v Hilliker, 436 F2d 101 [cited in North Carolina v Butler, supra, at 375, n 5]; United States v Mix, 446 F2d 615; accord, State v Baker, 2 Kan App 2d 395, 580 P2d 90).
In Gorham v Franzen (760 F2d 786, 794), the Court of Appeals for the Seventh Circuit surveyed the case law and adopted a "totality of the circumstances” test, listing as appropriate factors " 'the [defendant’s] age, experience, education, background, and intelligence, and * * * capacity to understand the warning given him’ ” (see, Johnson v Zerbst, 304 US 458, 464). In finding a waiver on the facts before it, the Gorham court stressed the defendant’s extensive prior experience with the criminal justice system and his positive acknowledgement that he understood his rights as they had been given to him (id., citing LaFave & Israel, Criminal Procedure, at 310 [1985 ed]; accord, Fleming v State, 284 Ark 307, 681 SW2d 390). A similar approach was taken in State v Aversa (197 Conn 685, 696, 501 A2d 370, 376), in which a waiver was found where the accused told the detective that he understood the rights that had just been read and "[h]is overall attitude and conduct exhibited a street-wise familiarity with police procedures.” Indeed, in the one recent case in which we squarely considered the problem of inferring a Miranda waiver from the suspect’s conduct, this Court took pains to note that the "defendant had been arrested on approximately 11 prior occasions.” (People v Davis, 55 NY2d 731, 733, supra.)
In contrast to these cases, this case involves no special facts *970 that could serve to distinguish it from all others in which the police elicit an incriminating statement before obtaining a waiver of the suspect’s Miranda rights. The record here does not reveal an extensive criminal history, such as was present in Gorham and Davis. Nor are any other special circumstances present which would support the inference that a conscious and deliberate waiver had occurred. In fact, unlike every other case in which a waiver has been found, this case does not even include a positive acknowledgement by the defendant that he understood the rights he was waiving. For that reason, the majority’s resort to the talismanic "mixed question” doctrine, which insulates the lower courts’ "undisturbed findings” from our review when they are supported by the record (see, e.g., People v Ferro, 63 NY2d 316, 321, n 2; People v Harrison, 57 NY2d 470, 477; see also, People v Centono, 76 NY2d 837, 840-841 [Titone, J., dissenting]), is unvailing here. As a review of the facts developed on the record reveals, there is simply no circumstance in this case— apart from the bare fact of defendant’s statement itself — from which a waiver of rights could be inferred.
Having expressed some discomfort with the English version of the Miranda warnings, defendant was given the Spanish version to read to himself and was told he could ask any questions he might have. Unlike the English version that is often used, the Spanish form defendant was given did not ask whether he understood the described rights or contain any other question requiring a "yes” or "no” response. Nevertheless, defendant was told to write "either yes or no according to each question.”
Given the ambiguity of the latter instruction, as well as the inherent meaninglessness of writing "yes” or "no” next to a declarative statement of rights, defendant’s conduct in writing "yes” in English next to each "warning” on the form certainly cannot be construed as an affirmative acknowledgement of his understanding that the law would protect him if he chose not to speak. Further, defendant’s failure to ask any questions after reading the form does not satisfy the People’s heavy burden of demonstrating that a waiver of important constitutional rights has occurred (see, North Carolina v Butler, supra, at 373). At most, that aspect of defendant’s conduct constitutes no more than a form of "silence” of the type that will not by itself support an inference of waiver (Miranda v Arizona, supra, at 475).
In short, by upholding the finding of waiver in the courts *971 below, this Court has gone well beyond what other courts have done in inferring waiver from a suspect’s post-Miranda conduct. By agreeing that a waiver was proven here, the majority has, in effect, had to rely exclusively upon "the silence of the accused,” coupled with "the fact that confession was in fact eventually obtained,” in direct contravention of the Miranda holding (384 US, at 475, supra). Further, the majority’s assertion that "it is difficult to imagine [how] a defendant could implicitly manifest waiver * * * other than [by] cooperating with his or her interrogation” (majority mem, at 968) is not a persuasive ground for its holding, since both the Miranda decision itself and the subsequent decision in North Carolina v Butler (supra, at 373) expressly rejected the defendant’s mere act of cooperating as a sufficient predicate for finding a Miranda waiver.
Most seriously of all, after the majority’s decision in this case, it will indeed be "difficult to imagine” a circumstance where an implied waiver will not be found as a result of the defendant’s voluntary agreement to speak after having been given Miranda warnings. Hereafter, there will be no logical basis for rejecting a finding of waiver unless the defendant shows some special circumstance undermining the inference of waiver that arises from his or her "cooperation.” Since that conclusion inverts the well-established burden of proof and makes a general rule out of what was once simply an available outcome in "some cases” (North Carolina v Butler, supra, at 373), I cannot embrace it. Accordingly, I would instead hold that the statement in question was taken before an effective waiver of Miranda rights was obtained. Consequently, it should have been suppressed.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Hancock, Jr., and Bellacosa concur; Judge Titone dissents and votes to reverse in an opinion.
Order affirmed in a memorandum..