Jerry HAYES *v.* STATE of Arkansas

CR 92-1359                           849 S.W.2d 501

Supreme Court of Arkansas
Opinion delivered March 22, 1993

*William R. Simpson, Jr.*, Public Defender, by: *Tammy Harris*, Deputy Public Defender.

*Winston Bryant*, Att'y Gen., by: *Brad Newman*, Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. This criminal appeal arises from the conviction, upon a jury verdict, and sentence to life imprisonment of the appellant, Jerry Hayes. Hayes was charged with the murder of Patricia Taunt. He questions the sufficiency of the evidence to sustain the conviction and argues a statement he made to the police should have been suppressed. We decline to consider the sufficiency argument because of Hayes's failure to move for a directed verdict, and we find no basis for suppressing the statement.

An unidentified person reported that Ms. Taunt was missing and that the police should "look into" her disappearance. Detective Stafford visited Ms. Taunt's home where he met Hayes and the victim's daughter. The daughter said the victim was not home and she didn't know where she was but that some of her clothing and jewelry were missing. The daughter said the victim had vanished a week earlier and she assumed that she was on the road with her truck-driver husband. Hayes was taken in for questioning and released an hour later.

Barry Mattinson had worked with Hayes for three months at a Pizza Hut restaurant, and they had become friends. Mattinson was interviewed by the police and made a statement implicating Hayes in the murder. In his testimony at Hayes's trial Mattinson said he received a call from Hayes at the restaurant asking for

help. Mattinson said he told Hayes he would not help him kill the victim, but then Hayes said he had just killed her and needed help to hide the body. Mattinsons said Hayes had, in the presence of other witnesses, threatened to kill the victim on several occasions. Brian Lowery, a former Pizza Hut manager, also testified of hearing Hayes threaten to kill the victim.

Mattinson said he agreed to help dispose of the body because Hayes threatened to kill the victim's son and any police officer with whom he came into contact. He also said he was a homosexual and in love with Hayes and became afraid of Hayes while they were in the process of trying to hide the body.

When Mattinson arrived at the house where Hayes and Ms. Taunt lived, Hayes was wearing bloody pants and seemed agitated. Mattinson saw a body wrapped in bloody blankets. Hayes placed the body in Mattinson's car. Forensic examination of the car later revealed bloodstains in the rear passenger floorboard. They drove to Heber Springs, hid the body under some brush, and returned later to bury it.

Mattinson led the police to the grave. Hayes was arrested shortly thereafter and interrogated by two officers who testified Hayes signed a statement acknowledging he had been advised of his rights, but he refused to sign a form stating he waived his rights. The officers said, however, that Hayes agreed to talk with them despite his unwillingness to sign the waiver. According to the officers, when Hayes was informed that Mattinson had told them the story Hayes made statements they felt were incriminating.

### 1. Sufficiency of the evidence

Arkansas R. Crim. P. 36.21(b) provides:

Failure to Question the Sufficiency of the Evidence. When there has been a trial by jury, the failure of a defendant to move for a directed verdict at the conclusion of the evidence presented by the prosecution and at the close of the case because of insufficiency of the evidence will constitute a waiver of any question pertaining to the sufficiency of the evidence to support the jury verdict.

Hayes did not move for a directed verdict at the conclusion of the

evidence presented by the prosecution. Nor did he move for a directed verdict at the close of the case. He did, however, move at the conclusion of a discussion of instructions to be presented to the jury, and just before the jury was to return to the courtroom for closing arguments, to "dismiss for lack of evidence."

Even if we were to equate the dismissal motion with one for a directed verdict, we would not consider it because of failure to make the motion at the conclusion of the prosecution's case. We have no case in which we have considered the issue whether a motion for directed verdict at the conclusion of the trial is sufficient to warrant consideration of sufficiency of the evidence when no such motion was made at the close of the prosecution's case. We observe, however, that the Rule ·is stated in the conjunctive, clearly requiring the motion to be made in both instances, as we said in cases such as *Collins* v. *State*, 308 Ark. 536, 826 S.W.2d 231 (1992), and *Dewitt* v. *State*, 306 Ark. 559, 815 S.W.2d 942 (1991).

The failure to make the motion at the conclusion of the prosecution's case and at the close of the case and the motion to "dismiss," made apparently as an afterthought, are indications that, apparently with good reason, Hayes was not serious about questioning the sufficiency of the evidence to go to the jury. We decline to consider the point.

## 2. *Suppression*

At the suppression hearing Officer Durham testified Hayes was arrested at 5:30 a.m., September 11, 1991, and advised of his rights pursuant to *Miranda* v. *Arizona*, 384 U.S. 436, 467 (1966). An interview took place after Hayes had, according to Officer Stafford, acknowledged being informed of his rights, refused to sign the waiver, but agreed to talk. The interview was not recorded. Officers Durham and Oberle testified that Hayes was coherent and had no problem understanding what was taking place. They also testified that Hayes did not request an attorney until the end of the interview, and after he did so no further questions were asked.

Oberle began the interview and informed Hayes that Barry Mattinson had made a statement identifying Hayes as the murderer and had led them to the body. At one point, Oberle

asked Hayes if he wanted to tell his side of the story, to which Hayes replied, "Why should I? Barry already told you everything." Later Hayes said, "I knew Barry would end up telling. I saw Barry get picked up down the street earlier, and I knew y'all would be coming to get me. That's why I was clothed and my shoes on . . . . I was sitting in the chair waiting and had fallen asleep."

Other statements were alleged to have been made by Hayes, but the Court concluded they were actually non-answers to questions from which the officers made assumptions. Only the statements contained in the testimony quoted were admitted in evidence.

Hayes denies making any statements and asserts he requested an attorney at the beginning of the interview. He first argues the statements should have been suppressed because Mattinson testified at trial that the officers had lied to him (Mattinson) to obtain information. No such argument was made to the Trial Court, and as this objection is being raised for the first time on appeal it need not be considered. *Smith* v. *State*, 310 Ark. 30, 832 S.W.2d 497 (1992); *St. Clair* v. *State*, 301 Ark. 223, 783 S.W.2d 835 (1990).

Hayes argues that the fact that he was arrested at 5:30 a.m. and was suffering from sleep deprivation justified suppression. Again, he made no such argument at the trial, and it will not be considered.

Finally Hayes contends he did not make the statements attributed to him by the officers. He argues his refusal to sign the waiver form indicates he did not waive his rights and that as he requested an attorney the officers should not have continued to question him. To the extent these arguments raise issues of credibility, we defer to the trier of fact, in this instance the Trial Court, who was in the better position to assess their truthfulness. *Atkins* v. *State*, 310 Ark. 295, 836 S.W.2d 367 (1992); *Brown* v. *State*, 309 Ark. 503, 832 S.W.2d 217 (1992).

In reviewing the denial of a motion to suppress we make an independent examination based upon the totality of the circumstances and reverse only if the decision of the Trial Court was clearly against the preponderance of the evidence. *Watson* v.

*State*, 308 Ark. 643, 826 S.W.2d 281 (1992).

■ No argument was advanced or evidence presented which would support the conclusion that Hayes lacked the capacity to understand the warnings given him or the consequences of his speaking to the officers. Hayes was 26 years old at the time of his omnibus hearing which took place approximately 9 months after his interrogation. Hayes testified he had some college education, and he said no threats or promises were made. He also said there was no lengthy wait prior to his interrogation. Given the totality of the circumstances we conclude Hayes's implicit waiver of his right to remain silent was with knowledge of the consequences.

■ The waiver was also voluntary. In making his ruling the Court made a threshold inquiry whether there is any requirement that prior to making a statement an accused must sign a written waiver. Hayes's counsel conceded there is no such requirement, and we so held in *Fleming* v. *State*, 284 Ark. 307, 681 S.W.2d 390 (1984).

■■ The totality of the circumstances approach in these situations involves two major components; first, the conduct of the officers and second, the vulnerability of the accused. *State* v. *Graham*, 277 Ark. 465, 642 S.W.2d 880 (1982). Two officers said Hayes waived his right and made the incriminating statements. Hayes denies it but acknowledges the lack of coercive circumstances. As noted above, we decline to reverse the Trial Court's ruling which was obviously based on belief of the officers' testimony as opposed to that of Hayes with respect to the implied waiver.

### 3. Rule 11

The record has been examined in accordance with Ark. Sup. Ct. R. 11(f), and it has been determined that there were no rulings adverse to the appellant which constituted prejudicial error.

Affirmed.